629 A.2d 742

**Anthony CICORIA**

v.

**STATE of Maryland.**

**No. 159, Sept. Term, 1991.**

Court of Appeals of Maryland.

Aug. 27, 1993.

22

24

William C. Brennan, Jr. (Knight, Manzi, Brennan, Ostrom & Ham, on brief), Upper Marlboro, for petitioner.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr. Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

We granted certiorari to decide whether, under the Maryland Theft Statute, Maryland Code (1957, 1992 Repl.Vol.) Art. 27, §§ 340 *et seq.*, a candidate for public office may be convicted of theft and conspiracy to commit theft when the funds alleged to have been stolen and which are the subject of the conspiracy, are those contributed to the candidate's campaign political committee. When the Court of Special Appeals considered the issue, it answered in the affirmative. *Cicoria v. State*, 89 Md.App. 403, 598 A.2d 771 (1991). We shall do likewise.

I.

Anthony Cicoria ("Cicoria"), the petitioner, was a county councilman representing the Second District of Prince George's County. His candidacy was promoted by an authorized campaign political committee, Citizens for Cicoria

("CFC"). *See* Maryland Code (1957, 1990 Repl.Vol.) Art. 33, § 1–1(a)(1).[1] CFC was also a continuing campaign political committee. *See* 63 Op. Att'y Gen. 273, 274–77 (1978).

Cicoria and his wife, Catherine, were indicted in March, 1990. As relevant to the case *sub judice,* the indictment alleged that the Cicorias[2] stole and conspired to steal, more than $64,000 from CFC.[3] He was tried and convicted by a jury in the Circuit Court for Prince George's County and sentenced to concurrent ten years terms of imprisonment, all but five years suspended, in lieu of, upon release, five years probation and restitution.

The evidence adduced at trial tended to prove that, for five years, beginning in 1984, Cicoria and his wife, who became chairman of CFC in 1986, engaged in a continuing course of conduct, contrary to both the State election laws, *see* art. 33, in particular, §§ 26–1 to 26–21 (the "Fair Election Practices Act"), and the theft statute, to steal money from Cicoria's election campaign committee. In one scheme, Cicoria was reimbursed by CFC for a $2300 loan he purportedly made to the committee. Although he signed a campaign report which represented that he made such a loan, Cicoria never actually made a loan in that amount. While CFC did receive $2300, it was received in the form of small contributions by specific

---

1. Section 1–1(a)(1) provides:
 "Authorized candidate campaign committee" means a political committee established under § 26–4 of this article and authorized by a candidate to promote his candidacy.

2. His wife left the jurisdiction prior to the scheduled trial date. She has since returned and pled guilty to one count each of felony theft and perjury. She was sentenced to five years imprisonment, all but 140 days of which were suspended in favor of five years probation and restitution.

3. Cicoria was also charged with, and convicted of, perjury, failure to file a complete campaign report, and tax evasion. The propriety of those charges and convictions is not before us.
 Cicoria and his wife previously had been indicted, in 1989, for theft, conspiracy to commit theft, perjury, failure to complete a campaign report and tax evasion. Those charges were either dismissed by the circuit court or *nolle prossed* by the State Prosecutor.

donors, which were never reported as such. Rather, the campaign fund reports noted a loan made to CFC, when in fact the actual campaign contributions were deposited into one of the Cicorias' personal bank accounts. At first glance, the unlisted contributions "passed" as a loan because Cicoria would then draw a check on his personal account and also make himself the payee. Cicoria would then reimburse himself for the "loan" using other campaign contributions. In addition, Cicoria was reimbursed in excess of the amount he actually loaned the campaign committee.

A second scheme Cicoria used to obtain campaign funds involved his purchase of a facility to be used for his headquarters. The evidence showed that Cicoria, his wife, and his mother purchased a unit in the Prince George's Plaza Professional Park, which he used for his headquarters. The loan documents characterized the purchase as a personal investment. Nevertheless, CFC paid more than $30,000 towards the purchase price and made some of the mortgage payments, as well. Cicoria deducted the interest paid in respect of that purchase from his personal income taxes.

In yet another scheme, contributions to CFC were not deposited in the campaign fund account required by the Election Code. The State adduced evidence that campaign contribution checks made payable to CFC were deposited in an account maintained by Mrs. Cicoria, which, according to the custodian of records for the bank, was a joint personal account with Anthony Cicoria. The funds deposited in that account were required by the Fair Election Practices Act, art. 33, § 26-5, to be deposited in an account established by CFC for the deposit of campaign contributions.

Finally, testimony showed that Catherine Cicoria acting as chairperson,[4] purported to pay campaign related expenses when, in fact, "the payments" were deposited to the alleged personal accounts of the Cicorias designated as "C. Cicoria"

---

4. At no time during the campaign was Catherine Cicoria treasurer or subtreasurer. There was a succession of treasurers during the life of CFC. At trial, they testified that they had minimal responsibility for filing campaign reports and minimal contact with campaign funds.

and "C.M. Cicoria." The campaign related expenses for which "payments" were made included, *inter alia,* advertising, postage, printing, and rent, which either were not incurred or for which false receipts were generated to justify the reimbursement to Cicoria.

## II.

Cicoria does not challenge the sufficiency of the evidence to prove the schemes in which the State alleged he and his wife engaged. Rather than arguing that he did not take campaign funds from CFC, Cicoria asserts that those counts of the indictment charging theft and conspiracy to commit theft do not charge cognizable offenses. He reasons that one cannot steal from oneself: because the campaign contributions were made for his benefit and use, unless it is alleged that he used them for a purpose inconsistent with that use and benefit, no crime has been committed. As the petitioner sees it, he either is the sole owner or a joint owner with CFC, of all campaign contributions, even those made directly to CFC. Assuming that the Fair Election Practices Act does prescribe who has an ownership interest in the campaign contributions and he is not one of the persons with such an interest, he argues that ownership is in the campaign treasurer, not CFC, as charged in the indictment. Consequently, the petitioner maintains that dismissal of those counts of the indictment charging theft and conspiracy to commit theft was required.

Finally, the petitioner argues that the Fair Election Practices Act, essentially a comprehensive disclosure scheme, prescribing penalties for violation, *see, e.g.,* art. 33, §§ 26–16(b) [5] and 26–20,[6] precludes his prosecution under the theft statute. The petitioner finds support for this argument not only in the

---

**5.** Art. 33, section 26–16(b) provides:

(b) *Penalties.*—Every person who shall be guilty of any prohibited practices described in this section shall be fined not more than $1,000.00 or be imprisoned for not more than one year, or both, and shall be ineligible for any public or party office, for a period of four years from and after the time of the commission of such offense.

**6.** Art. 33, section 26–20 provides:

comprehensiveness of that portion of the Election Code, but in its ambiguity, as well. Cicoria argues:

> Thus, all responsible authorities have consistently stated that the Election Code is a reporting or disclosure statute and that it is extremely ambiguous and lacking in clarity. The legislature could never have intended to apply a very specific criminal statute (The Theft Statute) to such a legal morass.

Petitioner's Brief at 32. Cicoria finds persuasive the fact that, unlike the way perjury is treated in the Fair Election Practices Act, *see* art. 33, § 26–15,[7] theft of campaign funds is not listed as a crime. *Id.*

### III.

 The theft statute prescribes five ways in which the crime of theft can be committed. Art. 27, § 342. Only two of them, *id.* at § 342(a)[8] and § 342(b)[9], have relevance to the

---

Any person who violates any of the provisions of this subtitle is guilty of a misdemeanor, and upon conviction shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned for not more than one year, or both, in the discretion of the court. If a different penalty is specifically prescribed for violation of any section in this subtitle and expressly set forth therein, the specific penalty applies and the penalty set forth in this section does not apply.

7. Section 26–15 provides:
 Any wilfully, false, fraudulent, or misleading statement or entry made by any candidate for office, treasurer, or subtreasurer, or by any member or officer of any political committee, in any statement or account under oath required by this article, shall constitute the crime of perjury, and be punishable as such according to the laws of this State.

8. Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 342(a) provides:
 (a) *Obtaining or exerting unauthorized control.*—A person commits the offense of theft when he willfully or knowingly obtains control which is unauthorized or exerts control which is unauthorized over the property of the owner, and:
 (1) Has the purpose of depriving the owner of the property; or
 (2) Willfully or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or
 (3) Uses, conceals, or abandons the property, knowing such use, concealment, or abandonment probably will deprive the owner of the property.

9. (b) *Obtaining control by deception.*—A person commits the offense of theft when he willfully or knowingly uses deception to obtain and does obtain control of the property of the owner, and

case *sub judice.* Those sections proscribe the obtention or exertion of unauthorized control, *id.* at § 342(a), or the obtention of control by deception, *id.* at § 342(b), "over the property of the owner," with the intent to deprive the owner of the property. The ultimate use to be made of the property is not an element of the crime.

An "owner" is defined as

[a] person, other than the offender, who has possession of or any other interest in the property involved, even though that interest or possession is unlawful, and without whose consent the offender has no authority to exert control over the property.

*Id.* at § 340(g). In addition to having possession under the theft statute, the owner must be a person. Although "person" is not a defined term under the theft statute, it is clear that the use of that term does not mean that the owner must be a natural person; for purposes of the theft statute, "person" has been interpreted expansively, as including individuals, *Kimbrough v. Giant Food, Inc.,* 26 Md.App. 640, 339 A.2d 688 (1975); corporations, *Melia v. State,* 5 Md.App. 354, 247 A.2d 554 (1968); and financial institutions. *Pearlstein v. State,* 76 Md.App. 507, 547 A.2d 645 (1988). CFC, a political committee, *i.e.,* two or more persons formed to promote the success of Cicoria's candidacy, art. 33, § 1-1(a)(14),[10] is a "person" for

---

(1) Has the purpose of depriving the owner of the property; or
(2) Willfully or knowingly, conceals, or abandons the property in such manner as to deprive the owner of the property; or
(3) Uses, conceals, or abandons the property knowing such use, concealment, or abandonment will probably deprive the owner of the property.

**10.** Section 1-1(a)(14) defines a "political committee" as

any combination of two or more persons appointed by a candidate or any other person or formed in any other manner which assists or

purposes of the ownership provision of the theft statute.[11]

Article 27, section 340(f) defines "obtain" to mean, "[i]n relation to property, to bring about a transfer of interest or possession, whether to the offender or to another...." One "exerts control" when he or she "tak[es], carr[ies] away, appropriat[es] to one's own use or sale, conveyance, transfer of title to, interest in, or possession of property." § 340(d). Section 340(i) defines "property of another" as "real or personal property in which a person other than the offender has an interest which the offender does not have authority to defeat or impair, even though the offender himself may have an interest in the property." *See also* Art. 27, § 343(a).[12] These

---

attempts to assist in any manner the promotion of the success or defeat of any candidate, candidates, political party principle or proposition submitted to a vote at any election.

11. There are a number of Maryland statutes defining "person" expansively to include entities other than natural persons. *See, e.g.,* Maryland Code (1957, 1990 Repl.Vol., 1992 Cum.Supp.) Art. 1, § 15, defining "person" as including "[a] corporation, partnership, business trust, or limited liability company." *See also* Maryland Code (1988) § 1–101(p) of the Tax–General Article, which provides:

(p) *Person.*—(1) "Person" means an individual, receiver, trustee, guardian, personal representative, fiduciary, or representative of any kind and any partnership, firm, association, corporation, or other entity.

(2) "Person", unless expressly provided otherwise, does not include a governmental entity or a unit or instrumentality of a governmental entity.

*Accord* Maryland Code (1957, 1990 Repl.Vol., 1992 Cum.Supp.) Art. 41, § 10–801(j), Maryland Code (1992) Bus.Reg. Art. § 1–101; Maryland Code (1974, 1989 Repl.Vol., 1991 Cum.Supp.) Cts. & Jud.Proc. Art. § 3–401; Maryland Code (1957, 1990 Repl.Vol.) Art. 24, § 1–101; Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 764; Maryland (1957, 1990 Repl.Vol.) Art. 40A, § 1–201(y); Maryland Code (1957, 1991 Repl.Vol.) Art. 48B, § 1(11).

12. Art. 27, § 343 provides, in pertinent part:

(a)(1) It is not a defense to the offense of theft that the defendant has an interest in the property which was the subject of the theft if another person also has an interest or right of possession in the property that the defendant is not entitled to infringe.

(2) The following delineate[s] the right of possession:

(i) A joint or common owner of property does not have a right of possession of the property superior to that of any other joint or common owner of the property.

definitions make clear that theft can be committed by effecting a transfer in possession only. A thief may have an interest in the property taken so long as that interest is not, under the circumstances, superior to that of the possessor.

■■ Whether or not a defendant has an interest sufficient to entitle him or her to possession of the property, and, hence, avoid a prosecution for theft, must depend upon the circumstances. In this case, those circumstances include the requirement of those provisions of the Election Code that prescribe how campaign funds are to be collected, kept and disbursed, and allocate responsibility in that regard. Whether the candidate has a right to possess campaign funds must necessarily depend upon whether there has been compliance with those provisions.

### IV.

### A.

As Cicoria correctly observes, no where in the Election Code, and, in particular, the Fair Election Practices Act, is the issue critical to the resolution of this case expressly addressed: who is to be considered the owner of campaign contributions? The intent may be gleaned, however, from the comprehensive scheme the Legislature constructed when it enacted the Fair Election Practices Act. The allocation of functions and duties among the various campaign personnel, thus, regulating the conduct of political campaigns, *County Council for Montgomery County, Md. v. Montgomery Ass'n, Inc.*, 274 Md. 52, 60–61, 333 A.2d 596, 600–601 (1975); *Parker v. Junior Printing Serv., Inc.*, 266 Md. 721, 726, 296 A.2d 377, 380 (1972), is most revealing. So too is the removal from the candidate's hands of sole discretion for campaign funds. *See Healy v. State*, 115 Md. 377, 382, 80 A. 1074, 1078 (1911).

The Fair Election Practices Act requires a candidate for public office to organize in at least one of two ways. "[A]s a condition precedent to qualifying as candidate, [each candidate for election to public office] shall appoint one campaign trea-

surer," art. 33, § 26–3(a)(1)(i), who, along with the candidate, "shall file campaign fund reports in accordance with § 26–11." *Id.* Section 26–3(a)(1)(ii) provides that if "an authorized candidate campaign committee has been established," the candidate need not appoint a campaign treasurer. An authorized candidate campaign committee, *see* n. 1, *supra,* is one "established under § 26–4 . . . and authorized by the candidate to promote his candidacy." *Id.* at § 1–1(a)(1).

As in the case of a campaign organized under section 26–3, every political campaign committee must have a treasurer. Unlike the section 26–3 situation, however, it is the committee, rather than the candidate, that appoints the treasurer.

■ Whether appointed by the candidate or a political campaign committee, the treasurer is only the agent of the appointing authority. This is made obvious by the definition of "treasurer." Section 1–1(a)(18) defines "treasurer" as "any person *appointed by a candidate [or] political committee . . .* to receive or disburse money or other things of value to promote or assist in the promotion of the success or defeat of any candidate . . . at any election." (Emphasis added). See also section 1–1(a)(5)(i), defining "contribution" as:

the gift, transfer or promise of gift or transfer of money or other thing of value to any candidate, or his representative . . . to promote or assist in the promotion of the success or defeat of any candidate, political party, principle or proposition submitted to a vote at any election.

The agency relationship of the treasurer to the appointing authority is confirmed by the duties assigned to the treasurer.

Section 26–4(a) is explicit in providing that:

[t]he treasurer shall receive, keep, and disburse all sums of money, or other valuable things, *which may be collected, received, or disbursed by the committee or organization or by any of its members for any purposes for which the*

*committee or organization exists or acts.* (emphasis added).[13]

Sections 26–6(a) and 26–7(a) are also instructive. Section 26–6(a) provides:

> (a) *Contributions and expenditures to pass through treasurer.*—All contributions, money or other valuable things collected, received or disbursed by any candidate or committee for any purpose, shall be paid over to and made to pass through the hands of the treasurer and, except as provided in § 26–5(c) of this article, shall be disbursed by him. It is unlawful for any candidate or any member or members of a committee, or for any member or members of a political committee, to make any expenditure, to disburse or expend money or any other valuable things, for any purposes until the money or other valuable things so disbursed or expended has passed through the hands of the treasurer.

The treasurer is required, by section 26–7(a) to:

> keep detailed, full and accurate accounts in ... "account books" ... of all contributions, money or valuable things received by or promised to, and of all expenditures, disbursements and promises of payment or disbursements of money or valuable things made by any committee, or any of its officers or members, or by any person acting under its authority, or on its behalf.

The accounts must reflect not only the amount, but also the purpose for which the funds were received and/or disbursed. *Id.* Finally, the treasurer must file, on behalf of the committee, *see* § 26–11(b), reports or statements of contributions and expenditures. § 26–11(a). In the case of a political campaign committee, including an authorized campaign committee, the

---

**13.** Although this section addresses the duties of a treasurer for a political campaign committee, rather than of a treasurer appointed by a candidate—the duties of the latter not being specifically set out—it may be inferred that a treasurer appointed pursuant to section 26–3(a)(1)(i) also must receive and keep contributions and disburse expenditures made to or by the candidate.

statement must be filed jointly and severally with the chairman of the committee.[14] § 26–11(b).

Section 26–5(b) requires a political committee to designate a campaign depository or depositories and to deposit therein, after receipt, "contributions in furtherance of a candidacy [or the] political committee." The deposit must be made by the treasurer or a subtreasurer appointed by the treasurer. *See* § 26–5(a).

■■ The foregoing demonstrates that it is CFC, rather than the candidate, that has the requisite "possession . . . or . . . other interest in the property involved. . . ." *See* Art. 27, § 340(g). There are even more cogent reasons why the candidate does not have such an interest.

■■ Although a candidate must appoint a treasurer, he or she "may not designate himself [or herself] as his own treasurer, or subtreasurer." Art. 33, § 26–3(c). Moreover, even the contributions and loans of a candidate or his or her spouse to the candidate's campaign, while not subject to the limitation on amount prescribed by section 26–9(d),[15] "must pass through the hands of the candidate's treasurer and be reported as required in other provisions in this subtitle." *Id.* at § 26–8(a). Finally, section 26–7(d) provides:

(d) *Disposition of surplus funds.*—Prior to the time of filing the final report required by § 26–11 of this article, any surplus funds remaining after payment of all campaign expenditures shall be:

---

**14.** Pursuant to section 26–4(a), the committee must appoint a chairman, in addition to the treasurer.

**15.** Section 26–9(d) provides:

(d) *Limit of contributions.*—(1) Except as provided in subsections (e) and (e–1) of this section, it is unlawful for any individual, association, unincorporated association, corporation, or any other entity either directly or indirectly to contribute any money or thing of value greater than $4,000 to any candidate or political committee or to contribute money in excess of $100 except by check in any 4–year election cycle. Total contributions by a contributor under this subsection shall not exceed $10,000 in any 4–year election cycle.

(1) Returned, pro rata, to the contributors by the treasurer;

(2) Paid to the State central committee of the party of which the candidate is a member or for which the political committee is acting;

(3) Paid to a central committee of the party of which the candidate is a member or for which the political committee is acting so long as the central committee is located in a county in which the candidate resides or seeks to represent;

(4) Paid to the local board of education or to a recognized nonprofit organization providing services or funds for the benefit of pupils or teachers;

(5) Paid to a charitable organization registered pursuant to § 3–202 of Article 41 or to a charitable organization exempt from such registration pursuant to Article 41, § 3–203; or

(6) Paid to any public or private institution of higher education in this State that possesses a certificate of approval from the Maryland Higher Education Commission, to be used by that institution to award scholarships, grants, or loans to students attending the institution.

That this section does not permit return of funds to the candidate is telling. For purposes of the theft statute, the candidate simply does not have the requisite possessory or other interest in campaign funds to be their owner.

For its argument that the candidate has at least an equal interest in campaign funds as the political campaign committee, the petitioner focuses on the definitions of "political committee," "contributors", and "expenditures". As to the former, the petitioner notes that the "joint or common interest" [16] of a "political committee" is to provide assistance to the

---

**16.** The petitioner finds significant the definition of "person" in Maryland Code (1985, 1993 Repl.Vol.) § 1–101(p) of the Corporations & Associations Article:

(p) *Person.*—"Person" includes an individual, corporation, business trust, estate, trust, partnership, limited liability company, association,

candidate and to support his or her candidacy; it is not to own campaign funds collected by it. He finds the definitions of "contributions" and "expenditures" significant because each definition refers to "any candidate" and makes no explicit reference to a political committee. Thus, the petitioner argues that the contributions are given to the candidate, and the expenditures are made by the candidate, not the political committee. The petitioner finds support for the former argument in 70 Op. Att'y Gen. 96, 98 (1985).[17]

 It is correct that the definition of political committee does not expressly state that the funds collected are owned by the committee. It does not have to, however. The Legislature recognized, as reflected in other sections of the Election Code, that to fulfill its responsibility, a political committee may have to receive, keep, and disburse campaign funds. Thus, in article 33, section 26–4(a), it is provided that the committee, through the treasurer appointed by the committee, may receive, keep, or disburse funds received by the committee for any purpose for which the committee exists. Section 26–6(a), as we have seen, also contemplates the collection, receipt or disbursement of contributions, money or other valuable things by a political committee. Similarly, section 26–7 requires the committee through its treasurer, to keep books reflecting collections and expenditures by the committee. Under section 26–11, the committee, through its chairman and treasurer, is required to make reports reflecting contributions, money or other things of value received by the committee during the applicable reporting period. Moreover, it is not correct that the definitions of "contributions" and "expenditures" refer

---

two or more persons having a joint or common interest, or any other legal or commercial entity.

17. The petitioner's reliance on 70 Op. Att'y Gen. 96, 98 (1985) is misplaced. Where a political committee is an authorized committee, it is not a novel proposition that contributions received by that committee and used for the candidate's benefit, can be deemed an indirect contribution to the candidate *via* the committee. That is all that opinion says, which is far from saying, or even implying, that contributions may only be made to the candidate, rather than to the political committee.

only to the candidate; rather, they refer to "any candidate, *or his representative*," Art. 33, § 1–1(a)(5)(i) (emphasis added), and to "any candidate, treasurer, *or other agent of such candidate*". Art. 33, § 1–1(a)(7) (emphasis added). Surely, given the statutory scheme envisioned by the Legislature, an authorized political committee is the candidate's "representative" or "other agent of such candidate."

### B.

In arguing that he is not guilty of theft because he cannot steal from himself, the petitioner asserts:

[a]ny superior interest in the campaign funds above that of Mr. Cicoria has not been defeated or impaired because Mr. Cicoria is not using the funds for "unauthorized" purposes.... Mr. Cicoria's personal use of campaign funds affects him personally while he is campaigning for public office, therefore that use assists "in the promotion of the success or defeat" of his candidacy....

Petitioner's Brief at 21 (citations omitted). He asserts, in other words, that his candidacy is promoted or assisted by any contribution or expenditures used for that purpose, however improper the method by which the funds were obtained. The petitioner also points out that the Election Code is silent with respect to so-called "proper" uses of campaign funds.

The ultimate use of stolen funds is not an element of the type of theft alleged in the instant case, nor ought it be. A conviction for theft will, and should, lie, no matter how laudable the purpose to which the thief may put the stolen funds. That this is so is reflected in the fact that the statute addresses the manner in which control over the funds is obtained, rather than the use to which the funds are put. All that is required to constitute a violation of the theft statute, whether the conduct falls under article 27, section 342(a) or (b), is that the property be taken with the intent to deprive the owner, as defined, of the property. That a defendant may use the property in such a way as to benefit the owner of the property, or, as in this case, arguably, consistent with the

purposes for which the money was raised, while relevant, certainly, to the defendant's intent, a matter of fact, does not exonerate the defendant automatically.

 Article 27, § 343(c) provides:

It is a defense to the offense of theft that:

(1) The defendant acted under a good faith claim of right to the property involved;

(2) The defendant acted in the honest belief that he had the right to obtain or exert control over the property as he did;

 * * * * * *

The petitioner raised no such defenses in this case. But even had he done so, they would have had to be generated, and ultimately decided, by the jury. *See Binnie v. State*, 321 Md. 572, 580, 583 A.2d 1037, 1041 (1991); *Sibert v. State*, 301 Md. 141, 148–49, 153, 482 A.2d 483, 487–489 (1984). As we have seen, moreover, the Election Code makes clear the process and procedure by which campaign funds are to be handled. That procedure, in turn, makes crystalline that, when the entity is an authorized political campaign committee, it is the committee, through its treasurer, to whom contributions, monies or other things of value must be passed. The Election Code does not provide a mechanism for the candidate, even when the campaign is run by the candidate, or the campaign chairman to have unrestricted control of campaign funds; even in those situations, campaign funds must pass through the treasurer.

 Obtaining, including by deception, and exerting unauthorized control over property of another violates sections 342(a) and (b), and, thus, is theft. Merely accepting property from the owner's agent, even when the agent has stolen it, without more, ordinarily is not. The recipient of such funds is also guilty of theft only if he or she is an aider and abettor of the theft. *CF. State v. Hawkins*, 326 Md. 270, 280–81, 604 A.2d 489, 495 (1992), quoting *State v. Ward*, 284 Md. 189, 196, 396 A.2d 1041, 1046 (1978), *appeal after remand*, 290 Md. 76,

427 A.2d 1008 (1981). Thus, thefts in which the treasurer is involved may create analytical problems. For example, a disbursement to the candidate of campaign funds belonging to a campaign political committee, authorized by the treasurer, would not expose the candidate to a charge of theft—the candidate's acquisition of, and exertion of control over, the funds being, in that event, authorized. A different result would obtain, however, where the treasurer's exertion of control over the campaign funds is, itself, unauthorized and the candidate is his or her aider and abettor. In that circumstance, the candidate's guilt of theft flows from and through the treasurer. No such analytical problems are presented by this case. The petitioner's wife was prominently involved in the various schemes whereby contributions destined for CFC were diverted to the petitioner, to be sure. She was not, however, as we have seen, the treasurer of CFC, merely its chairperson.

■ Accordingly, the argument that the funds were not purloined because they could have been, and ultimately were used, by the petitioner, for a valid purpose is without merit.[18]

■ *United States v. Pisani,* 773 F.2d 397 (2nd Cir.1985), upon which the petitioner relies for the proposition that the ultimate use of the funds determines whether a theft conviction is appropriate is inapposite.[19] Article 33, sections 26–4 through 26–9, unlike New York's election code, designates the entity and persons with responsibility for the receipt, handling, and disbursement of campaign funds and the procedure that entity and persons must follow in doing so. Thus, by

---

**18.** It is far from clear that the use to which Cicoria put the funds diverted from CFC was for a valid purpose. Certainly, we do not subscribe to the view, urged by Cicoria, that any use that a candidate makes of campaign funds is valid because any purpose for which the candidate spends those funds furthers and promotes, in some sense, that candidate's campaign.

**19.** The petitioner also cites *Nelson v. State,* 453 So.2d 473 (Fla.1984); *State v. Brasslett,* 451 A.2d 890 (Me.1982), neither of which provides any more support than does *Pisani.*

reference to those provisions, it can be established who has the paramount possessory, or other interest, in campaign funds. When, contrary to the prescribed procedures, campaign funds are obtained, whether by deception or without authorization, and used, with the requisite intent to deprive those persons with the paramount possessory interest in the funds, of the funds, the crime of theft occurs. It does not matter, in that event, for what purpose the funds are ultimately used.[20]

## V.

The petitioner finally argues that he should not have been charged and convicted of theft; the only charges that lay, he submits, were those arising under the Election Code. He contends that, by proscribing certain conduct and providing penalties therefor, the Election Code preempts, thus precluding prosecution under, the theft statute. As we have seen, he is impressed by the fact that the Legislature explicitly provided, in section 26–15, that, in addition to an Election Code violation, the making of a false statement on a campaign report is perjury, but accorded no consistent treatment to theft. The petitioner also perceives the Election Code as being a reporting statute, not an ownership statute. From this, he concludes that the Legislature did not intend that conduct violative of a provision of the Election Code would also result in a conviction under the theft statute.

We are here concerned with two state statutes which prescribe penalties for similar and, perhaps, overlapping, prohibited conduct. We have held that such statutes must be harmonized to the fullest possible extent. *Biggus v. Ford Motor Credit Co.*, 328 Md. 188, 208, 613 A.2d 986, 998 (1992); *State v. Bricker*, 321 Md. 86, 93, 581 A.2d 9, 12 (1990); *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md.

---

**20.** That contributions are for the benefit of the candidate does not give the candidate unbridled discretion or control over their use, a fact that the petitioner recognizes: Cicoria obtained the funds without going through the proper channels and, with the aid of his wife, used deception to obtain them.

505, 511, 525 A.2d 628, 631 (1987); *Management Personnel Servs. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310, 314 (1984). To do so, we have to discern the legislative intent in enacting the statutes. In that regard, we must presume that, when it enacted the later of the two, the Legislature was aware of all other relevant enactments. *Bricker,* 321 Md. at 93, 581 A.2d at 12. Only if the legislative intent, clearly expressed, is that one supersedes, or precludes prosecution under, the other will one statute be given preemptive effect. This is consistent with the position taken by the federal courts. *See United States v. Hopkins,* 916 F.2d 207, 218 (5th Cir.1990).

In that case, the court rejected the argument that a prosecution for fraud, concealment, and misapplication of funds arising out of the violation of certain provisions of the federal election law was precluded by the federal election laws. It noted that "when an act violates more than one criminal statute, the government may prosecute under either so long as it does not discriminate against either class of defendants," *id.* at 218 (quoting *United States v. Batchelder,* 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755, 764 (1979)), and it does not appear that the Legislature "clearly intended that one statute supplant another; the fact that one statute is more specific than the other is not sufficient." *Id.* at 213. The court concluded:

> There is no indication in the federal election laws that Congress intended them to supplant the general criminal statutes.... Moreover, the defendants in this case violated not only the election laws but also committed acts that constituted independent violations of the more general criminal statutes of Title 18. Conviction under those sections requires proof of elements not required to prove a violation of the election laws. The offenses under Title 18 thus stand wholly apart and separate from any violation of the federal election laws. The defendants' contention that they were improperly prosecuted under Title 18 is without support.

*Id.* at 218–219 (citation omitted).

Theft is different from the offenses proscribed by the Election Code. In addition to the conduct resulting in the

defendant's control of the property, proof of theft requires the State to establish that the defendant engaged in that conduct with the intent to deprive the owner of the property. An election code violation, on the other hand, only requires proof that the defendant acted in contravention of the code; only the conduct need be shown. Thus, while the same conduct may form the basis for a charge under both the Election Code and the theft statute, it is clear that the evidence required for a conviction of theft includes at least one element that proof of the election code violation does not.

There is no indication in the Election Code that the punishment prescribed under sections 26–16 and 26–20 was intended to be exclusive or that a prosecution, for the same conduct, brought under any other statute or the common law, was intended to be precluded. Nor is there any indication in its legislative history, as the Court of Special Appeals correctly pointed out, *see Cicoria,* 89 Md.App. at 420 n. 19, 598 A.2d at 780 n. 19, that the Legislature intended that, when the same conduct could violate a statute other than the Election Code, only an Election Code violation would lie. Certainly, unlike *Forbes v. State,* 324 Md. 335, 341, 597 A.2d 427, 430 (1991), in which the legislative intent to preempt prosecution for common law involuntary manslaughter was held to be evident by the enactment of a manslaughter by automobile statute, a comparison of the theft statute with the Election Code reveals no such legislative intent.

JUDGMENT AFFIRMED, WITH COSTS.