Dear Mayor Casula:
You have requested our opinion whether the Prince George's County Board of Registration for Master Electricians and Electrical Contractors may be legally authorized to hear appeals relating to the recently enacted electrical code of the City of Laurel. Our opinion is that the Board may do so.
 I Background
Since 1984, fire and electrical plan review and inspections relating to the City of Laurel have been performed by the Prince George's County agencies responsible for providing these services. Section 1-7.1 of the Laurel Code exempted Laurel from County legislation except for provisions relating to the administration of master electrician and electrical contractor licenses and the electrical building code.[1] This arrangement, which allowed Laurel to exempt itself generally from County legislation except for provisions of the County Code that the City elects by ordinance to retain, is authorized under Article 23A, § 2B of the Maryland Code.[2]
Because of fiscal constraints, Prince George's County notified Laurel in 1995 that the County could no longer perform most of the services provided to Laurel, including the administration and enforcement of the County electrical code. As a result, the City of Laurel adopted its own electrical code, Laurel Ordinance 1196, which became effective on April 1, 1996.[3] This ordinance requires electrical contractors and electricians to be licensed by Prince George's County in order to be issued electrical permits in the City.
Ordinance 1196 also provides that appeals relating to the City's electrical code, including complaints that could result in disciplinary action against a licensee, would be handled by the Prince George's County Board of Registration for Master Electricians and Electrical Contractors ("County Board"). Ordinance 1196, §§ 4-266(c), 4-279, and 4-280. The City elected to use the County appellate process because the County Board already had the expertise and procedures in place for appeals.
 II Analysis
A. Introduction
Article 23A, § 2B(d) of the Maryland Code provides as follows:
 Any municipality may, by ordinance, request and authorize the county within which it is located to administer or enforce any municipal legislation. Upon the enactment of such an ordinance, such county may administer or enforce such municipal legislation on such terms and conditions as may mutually be agreed.
Because Ordinance 1196 authorizes the County Board to handle appeals from the City's electrical code, the City takes the position that it has invoked Article 23A, § 2B(d).
However, Prince George's County has objected to enforcing Ordinance 1196. The County argues that the phrase "administer or enforce" does not encompass the County Board's appellate function. Specifically, the County argues that, when the County Board is hearing an appeal, it is performing a quasi-judicial function that is neither "administration" nor "enforcement." Furthermore, according to the County, the Board cannot adjudicate matters based on the laws of another jurisdiction, because the Board's jurisdiction is limited to County ordinances.
As always, our goal in interpreting a statute is "to ascertain and carry out the true intention of the Legislature."Condon v. State, 332 Md. 481, 490-91, 632 A.2d 753 (1993) (citingTucker v. Fireman's Fund Ins. Co., 308 Md. 69, 93, 517 A.2d 730
(1986)). We must start with the words of the statute to discern legislative intent. In this case, the words "administer" and "enforce" are both susceptible to very broad interpretations and do not provide us with definitive evidence of the legislative objective underlying § 2B(d). Thus, we must look to "other sources to discern the Legislature's intent" when it enacted § 2B(d).Armstead v. State, 342 Md. 38, 56, 673 A.2d 221 (1996).
B. Legislative History of Article 23A, § 2B
Article 23A, § 2B, enacted as Chapter 398 of the Laws of Maryland 1983, is often referred to as the "Tillie Frank" law, because its purpose was to overturn the decision of the Court of Appeals in Town of Forest Heights v. Tillie Frank, 291 Md. 331,435 A.2d 425 (1981). In that case, a divided Court of Appeals held that where a charter county ordinance conflicted with a municipal ordinance enacted under the municipality's general police powers, the county ordinance prevailed.
Because the Tillie Frank case altered the commonly understood relationship between home rule counties and municipalities, in 1982 Governor Hughes established a study group, the "Tillie Frank Task Force." The Task Force was charged with developing legislation that would reestablish the balance between counties and municipalities.[4] See Report of the Tillie Frank Task Force (January 18, 1983). The recommendations of the Task Force were embodied in House Bill 1277 of 1983, enacted as Chapter 398.
Unfortunately, neither the Task Force Report nor the bill analysis of the Constitutional and Public Law Committee explains whether the phrase "administer or enforce" in § 2B(d) was intended to include an administrative appellate process. The report describes subsection (d) as "intended to clarify that a municipality may request that a county administer municipal legislation within a municipality, but that the county may, but is not required to, accept this burden." Task Force Report at 12. The bill analysis states that "[a] municipality may, by ordinance, request or authorize its county to administer or enforce municipal legislation." Bill Analysis of the Constitutional and Public Law Committee at 2.
C. Other Statutes
The Court of Appeals accepts the useful presumption that the General Assembly is aware of the legal context when it passes a bill. See, e.g., Cicoria v. State, 332 Md. 21, 43, 629 A.2d 742
(1993). Accordingly, we may infer some indication of the legislative understanding of the phrase "administer or enforce" from the statutes of other administrative agencies at the time that § 2B was enacted. These other statutes suggest to us that the General Assembly understood the phrase to include quasi-judicial administrative appeals.
Under § 2-104 of the Health-General ("HG") Article, the Secretary of Health and Mental Hygiene has the authority to "carry out and enforce the provision of this article."[5] Included within the Department of Health and Mental Hygiene is a Board of Review, which hears appeals from persons aggrieved by any decision, action, or inaction on the part of the Secretary or any unit in the Department. HG § 2-207(a). The Department of Agriculture also has a similar statutory scheme, under which the Secretary is given the authority to "carry out and enforce" the law, and a Board of Review is established within the Department to hear appeals from decisions of the Secretary or other officials of the Department. §§ 2-104 and 2-404 of the Agriculture Article. See also former § 1-107 of the Natural Resources Article (Department of Natural Resources Board of Review) (repealed by Chapter 25 of the Laws of Maryland 1990). These boards of review are part of the mechanism by which the department secretaries "carry out" a variety of administrative functions. This opportunity for quasi-judicial appeals — essentially a formal method for correcting agency mistakes — is commonly and correctly viewed as a part of the administrative process.
Against this background, the General Assembly would likely have conceived of § 2B(d) as allowing a municipality to avail itself of a county appellate process that is comparably integral to an administrative enforcement scheme.
D. Case Law
In two cases, the Court of Appeals discussed whether quasi-judicial functions are within the scope of an administrative agency's power to administer and enforce the law. Aspects of the discussion in these cases support the conclusion that the General Assembly intended to permit a county agency to administer or enforce a municipal ordinance by means of an administrative appeal process.
In Department of Natural Resources v. Linchester Sand andGravel Corp., 274 Md. 211, 334 A.2d 514 (1975), the Court of Appeals reviewed the denial of a permit by the Department of Natural Resources. The aggrieved party appealed the decision to the Board of Review, an entity established within the Department to hear appeals. 274 Md. at 214. In discussing the role of an administrative agency, the Court stated:
 The primary function of administrative agencies is to advance the will and weal of the people as ordained by their representative — the Legislature. These agencies are created in order to perform activities which the Legislature deems desirable and necessary to forward the health, safety, welfare and morals of the citizens of this State. . . . They in addition take on a judicial coloring in that frequently, within the exercise of their power, they are called upon to make factual determinations and thus adjudicate, and it is in that sense that they are also recurrently considered to be acting in a quasi-judicial capacity.
274 Md. at 222 (emphasis added).
In Prince George's County v. Blumberg, 288 Md. 272,418 A.2d 1155 (1980), the Court was asked to determine whether an applicant for a license failed to exhaust all administrative remedies when the applicant appealed a decision of the County's Department of Licenses and Permits to the circuit court. By appealing directly to the circuit court, the applicant bypassed the County Board of Appeals, which had been established to hear administrative appeals, including appeals from a final decision of a building inspector. 288 Md. at 281.
When discussing the County Board of Appeals, the Court indicated that it viewed the Board as an administrative agency, albeit one performing a quasi-judicial activity:
 The principal reason for this exhaustion requirement with respect to administrative bodies are manifest — (i) the issues are largely within the expertise of the involved agency to hear the evidence and determine the propriety of the request; (ii) the courts would be undertaking functions the legislature thought could be best performed by an agency; and (iii) courts might be called upon to decide matters that would never arise if the prescribed administrative remedy was followed.
288 Md. at 284 (1980) (emphasis added).
The County Board of Appeals involved the Blumberg case is similar to the County Board involved here, in that they both have the authority to rule on interpretations of a building code and have the power to affirm, modify, or reverse a decision of an inspector. Accordingly, even when the County Board is performing a quasi-judicial function, it would still fall within the Court's characterization of an "administrative agency." Moreover,Linchester illustrates that quasi-judicial functions commonly are within the scope of the powers granted to an administrative agency.
 III Conclusion
In summary, it is our opinion that the County Board of Registration for Master Electricians and Electrical Contractors is legally authorized to administer Ordinance 1196 by hearing and deciding appeals in matters arising under the City of Laurel's electrical code.[6]
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions and Advice
[1] Since the City adopted its own electrical code, it also enacted Ordinance No. 1202, which exempted the City from the County electrical code.
[2] The background and purpose of this provision are explained in Part IIB below.
[3] Since the City adopted its own electrical code, it also enacted an ordinance exempting the City from the County electrical code.
[4] "Until the Tillie Frank decision, it was believed by many people that county laws on matters which were within the powers of municipalities in that county were not applicable in the municipalities, at least where the municipal ordinance conflicted with county legislation." Report of the Tillie Frank Task Force at 1.
[5] The term "carry out" in this context is synonymous with the term "administer." Compare Random House Dictionary ofthe English Language 26 (2d ed. 1987) (definition of verb "administer") with id. at 319 (definition of verbal phrase "carry out").
[6] Although we have concluded that the County Board has the authority to enforce Ordinance 1196, Prince George's County is not required to enforce the ordinance; § 2B(d) provides that a county "may administer or enforce such municipal legislation."
 *Page 140