743 A.2d 262

**STATE of Maryland**

v.

**Shawn Patrick BROWN.**

No. 1262, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Dec. 29, 1999.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for appellant.

Nancy S. Foster, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellee.

Argued before MOYLAN, KENNEY, and JAMES S. GETTY (Ret., Specially Assigned), JJ.

MOYLAN, Judge.

Like the Rule in Shelley's Case and the Rule Against Perpetuities, the Best Evidence Rule is a treasured legal relic. As a practical matter, however, it is rapidly sinking into deeper and deeper obsolescence, as the error-fraught human activity which it was designed to circumscribe is being almost totally displaced by advancing technology. The single issue before us on this appeal by the State, pursuant to Md.Code Ann., Cts. & Jud. Proc. § 12–302(c)(3)(i),[1] is whether the State's offer of a photocopy or a Xeroxed copy or of what is sometimes called a "duplicate original" of a bench warrant even implicated, let alone offended, the Best Evidence Rule.

On May 21, 1998, Detective Herbert Ellingston of the Baltimore County Police Department was working as a warrant officer when he was called upon to serve a bench warrant on the appellee, Shawn Patrick Brown. The bench warrant itself was a one-page standard pre-printed form, at the top of which the appellee's name and address appeared. The warrant charged that the appellee had failed to appear in court on May 12, 1998. The warrant was signed by Judge Patricia S. Pytash. At 7:00 p.m. on May 21, Detective Ellingston served that warrant on the appellee at his address and arrested him.

As a result of items seized from the appellee in the course of a search incident to the warranted arrest, the appellee was charged with the unlawful manufacturing of a controlled dangerous substance and other drug related offenses. On June 23, 1999, a hearing was held with regard to the appellee's motion to suppress the physical evidence recovered in the

---

1. That section provides that "[i]n a criminal case, the State may appeal ... from a decision of a trial court that excludes evidence offered by the State[.]"

search incident to his arrest. The appellee challenged the lawfulness of the underlying arrest by challenging the bench warrant on which it was based.

During the hearing, Detective Ellingston testified that before serving the warrant on the appellee, he had received the warrant from Central Records and that it appeared to be a valid warrant with no defects. At the hearing, Ellingston was presented with a photocopy of the warrant. He positively identified it as a photocopy of the warrant he had served on the appellee, and the State submitted the photocopy as an exhibit. Detective Ellingston further testified that the warrant did not appear to have changed since he originally signed it immediately after its execution. On cross-examination, he acknowledged that the document was only a photocopy of the warrant and that the original was kept in the District Court files.

Defense counsel moved to suppress the photocopy. The trial court granted the defense request and explained:

All right. Now, so the motions hearing begins today and once again the State has failed to produce the original.

Now, In *Bumper v. North Carolina,* [391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)], the Supreme Court made an observation that if the State relied upon a search warrant to justify a search but failed to produce it in evidence, there is no way of knowing the conditions under which it was issued or determined whether it was based upon probable cause, and *what I'm talking about here is the best evidence rule.* But more to the point, in *Duggins v. State* [7 Md.App. 486, 256 A.2d 354 (1969)], Duggins was convicted in Prince George's County of possessing counterfeit paraphernalia. He had been arrested in Prince George's County pursuant to a Federal warrant which had been obtained from the U.S. Commissioner on the same day as he was arrested, which I believe was October the 2 nd, 1968.

In that case there was testimony that the arresting officers told the defendant that they had a warrant. Now,

Duggins challenged the legality of the warrant and he demanded its production so that the Court in assessing the constitutional validity of the arrest could pass on the legality of the warrant.

In that case the State declined to produce the warrant taking the position of the federal agents that they had ... a valid warrant in their possession was sufficient and, the trial court accepted it. The Court said that when the constitutional validity of the arrest was challenged, which we have here, and that the basis for the arrest was an arrest warrant, which we have here, and relying solely on the warrant to justify the arrest, there's no question about that, and it's challenged, no question about that, it's production has been called for, no question about that, then it says, "We think the State was required to do more than simply make a testimonial showing." So the testimony of the officer is not good enough.

Now, the State points out that the rules of evidence permit substituting a copy, and I think that's true in almost most situations but what we are dealing with here is someone's liberty, and whether the State has done all it is supposed to do correctly.

*In my judgment the best evidence rule,* or whatever you want to call it, *is still applicable here;* that the defendant is entitled to see the document upon which his arrest was effected.

The State has been given a number of opportunities to produce it and they have failed to do so. So I say no more chances. This is almost a year old. So I'm going to grant the defendant's motion to suppress the warrant.

(Emphasis supplied). This appeal by the State followed.

### The "Best Evidence Rule" Inapplicable

█ Much of the analysis surrounding the "Best Evidence Rule" we here employ was developed in *Thompson v. State,* 62 Md.App. 190, 488 A.2d 995, *cert. denied,* 303 Md. 471, 494 A.2d 939 (1985). In that case, as here, the defendant challenged

the State's offering at trial of a photocopy or duplicate original of a search warrant. The defendant there seized upon the "Best Evidence Rule" and maintained that only the original, and not a copy, should have been produced by the State. The purpose of the "Best Evidence Rule," which as every treatise writer on evidence points out should more properly be called the "Original Document Rule," was set forth in *McCormick on Evidence* (2d ed.1972), § 230 at 560:

> The specific context in which it is generally agreed that the best evidence principle is applicable today should be definitely stated and its limits clearly defined. The rule is this: *in proving the terms of a writing, where the terms are material, the original writing must be produced* unless it is shown to be unavailable for some reason other than the serious fault of the proponent.

(Emphasis supplied). The justification for the "Best Evidence Rule" is due to the chance of human error in the copying process. As *McCormick* explained:

> *[P]resenting to a court the exact words of a writing is of more than average importance, particularly in the case of operative or dispositive instruments such as deeds, wills, or contracts,* where a slight variation of words may mean a great difference in rights. In addition, it is to be considered (1) that there is substantial hazard of inaccuracy in many commonly utilized methods of making copies of writings, and (2) oral testimony purporting to give from memory the terms of a writing is probably subject to a greater risk of error than oral testimony concerning other situations generally. The danger of mistransmitting critical facts which accompanies the use of written copies or recollection, but which is largely avoided when an original writing is presented to prove its terms, justifies preference for original documents.

*Id.* at § 231 p. 561 (emphasis supplied). *See also Andresen v. State,* 24 Md.App. 128, 203, 331 A.2d 78 (1975); *Wentworth v. State,* 29 Md.App. 110, 122–23, 349 A.2d 421 (1975). By contrast, "[t]he rule does not apply to exclude evidence offered to show the existence, execution, or delivery of a writing,

recording, or photograph." 6 Lynn McClain, *Maryland Evidence State and Federal* (1987), § 1001.4 p. 527.

In *Thompson*, this Court was unpersuaded that the defendant's challenge to the admission of a search warrant even fell under the umbrella of the "Best Evidence Rule":

> The appellant would like to take advantage of the fact that only a copy instead of the original document was offered to the court, but he fails utterly to relate his objections to any possible undergirding purpose that this evidentiary rule of preference was designed to serve. *There was in this case no issue raised as to the contents of the search warrant itself. It is a mass-produced, printed form put out by the Operations Bureau of the Baltimore City Police Department and referred to as "Form 77/187." Fully 85% of its contents is printed up in advance with only a few blanks left to be filled in,* such as the date of issuance and the name of the officer applying for the warrant. One critical blank permits a brief descriptive reference of the place to be searched. Another critical blank permits reference to the likely evidence that is the subject of the search and seizure. In the present case, no remote question was raised by the appellant that the place to be searched ("5810 Reisterstown Rd., room 270, Town House Motel, 2[nd] fl.") was not adequately described. By the same token, no remote question was raised by him that the reference to "cocaine, marihuana, paraphernalia for packaging and distribution of controlled dangerous substances" did not describe with adequate particularity "the things to be seized." *The contents of the search warrant were simply not in dispute and the entire contretemps about the "Original Document" Rule is, therefore, immaterial. A rule does not exist for its own sake, but only to serve a purpose.*

62 Md.App. at 209–10, 488 A.2d 995 (emphasis supplied).

As in *Thompson*, the contents of the bench warrant here were not in issue. As in *Thompson*, the bench warrant in the instant case was a pre-printed form. The blanks to be filled in consisted of (1) the appellant's name and address, (2) the case

**524**

number, (3) the reason for the issuance of the bench warrant in summary form, and (4) the signature of the judge or commissioner. Also to be filled in on the form was information for the "Return of Service," consisting of (1) the serving officer's name and rank, (2) the date and time of service, and (3) the location of service.

■ We have before us a one-page bench warrant with none of its contents being challenged. The appellee made no allegation that the information supplied on the bench warrant, *i.e.*, his address or his failure to appear in court on May 12, 1998, as the reason for the issuance of the warrant, was inaccurate in any way. Defense counsel challenged only the existence or the execution of the bench warrant and not the contents of the warrant:

> The motion to suppress is based on the illegal arrest. And I had a two-fold argument with regard to that one. *One is that the arrest warrant was defective, and that's if it existed at all.* That was my original point, because *I still had not been even given an indication that it existed,* that it was defective, not properly completed, and then as a result of—then my other argument was that the arrest was unlawful.

(Emphasis supplied). Where, as here, the terms of the warrant are not in dispute, the words of *McCormick,* § 233 "What Constitutes Proving the Terms," at 563, are particularly apropos:

> It is apparent that this danger of mistransmission of the contents of the writing, which is the principal reason for the rule, is only important when evidence other than the writing itself is offered for the purpose of proving its terms. Consequently, *evidence that a certain document is in existence* or as to its execution or delivery *is not within the rule and may be given without producing the document.*

(Emphasis supplied).

### The "Best Evidence Rule" Satisfied

■ Even if the "Best Evidence Rule" were applicable, however, it clearly was satisfied. Detective Ellingston testi-

fied at the suppression hearing that the document physically presented to him was a photocopy of the original warrant. The "copy" of the warrant at the suppression hearing thus qualified as a "duplicate" under Md.Code Ann., Cts. & Jud. Proc. § 10–103(a)(4):

*"Duplicate" means a counterpart produced* by the same impression as the original, or from the same matrix, or *by means of photography,* including enlargements and miniatures, or by mechanical or electronic rerecording, or by chemical reproduction, *or by other equivalent techniques which accurately reproduce the original.*

(Emphasis supplied). Subsection (b) of that provision continues by explaining that

[a] duplicate is admissible in evidence to the same extent as an original unless:

(1) A genuine question is raised as to the authenticity of the original; or

(2) Under the circumstances, it would be unfair to admit the duplicate in lieu of the original.

The above quoted portions of § 10–103 as well as the "Best Evidence Rule" are now embodied virtually verbatim in Rules 5–1002 and 5–1003 of the Maryland Rules of Evidence, formally codified in 1994. Rule 5–1002, entitled "Requirement of Original," provides:

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, excepted as otherwise provided in these rules or by statute.

The exception to which Rule 5–1002 refers is then found in Rule 5–1003, entitled, "Admissibility of Duplicates," which provides:

*A duplicate is admissible to the same extent as an original* unless (1) a genuine question is raised as to the

authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original. (Emphasis supplied).

In the instant case neither the statute nor the rules were offended. The "duplicate" original submitted to the trial court was, for the purpose of the "Best Evidence Rule," no different than the original itself. Professor McClain notes that "in most circumstances, a duplicate copy made by a machine, such as a photocopier, will be admissible to the same extent as the original." *McClain, supra,* at § 1001.1 p. 523; *see also Hartford v. Scarlett Harbor,* 109 Md.App. 217, 264, 674 A.2d 106 (1996), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997) ("The photocopy of the amendment, in turn, was admissible under the exception to the best evidence rule for photographic 'duplicates.'"); *Cicoria v. State,* 89 Md.App. 403, 425, 598 A.2d 771 (1991), *aff'd,* 332 Md. 21, 629 A.2d 742 (1993). Furthermore, as we explained in *Thompson,* 62 Md.App. at 212, 488 A.2d 995:

A vast chasm of time and technological advance separates the world of manual copying, in which the rule was born, from the world of highly sophisticated, mechanical reproduction today. *McCormick,* § 236, "Mechanical Reproductions," at 567, described that earlier world, out of which the rule of preference grew:

"The treatment of copies under the rule requiring the production of the original document can only properly be understood when viewed in light of the technological history of copying itself. In its earliest stages, the rule appears to have developed against a background of copying performed by individuals of the Bob Cratchit sort, transcribing manually not always under the best of conditions. Errors under such circumstances were routinely to be expected."

Professor Irving Younger vividly describes *the human frailty of a copier, as a Bob Cratchit, fingers numbed by the cold in the counting house and fraught with anxiety over the health of Tiny Tim, might distractedly misplace a decimal point, invert a pair of digits or drop a line. A Xerox*

*machine, by way of contrast, does not worry about Tiny Tim and does not, therefore, misplace decimal points, invert digits, drop lines, or suffer any of the other mental lapses that flesh is heir to.*

(Emphasis supplied). *See also Cooper v. State,* 41 Md.App. 392, 399, 397 A.2d 245 (1979) ("The historic purpose behind the original writing rule has diminished with the technologically accurate reproductions provided by carbon paper and photographic equipment. Both legibility and reliability are substantially assured by the new processes."); Cynthia A. DeSilva, *California's Best Evidence Rule Repeal: Toward A Greater Appreciation for Secondary Evidence,* 30 McGeorge L.Rev. 646, 655 (1999) ("Truly, the era of legal scriveners has passed; modern reproduction methods substantially decrease the chance of inadvertent errors in transcription. Therefore, one of the Best Evidence Rule's chief functions—the prevention of mistaken copying—simply is no longer of such pressing concern.")(footnotes omitted); Edward W. Cleary & John W. Strong, *The Best Evidence Rule: An Evaluation in Context,* 51 Iowa L.Rev. 825, 829 (1966) ("[M]odern methods of reproduction yield a counterpart from which the possibility of inadvertent error is virtually eliminated.").

Here, the appellee presented no justification as to why the "duplicate original" should not have been admitted. He failed to show, as both the rule and the statute require, that either (1) a genuine question existed as to the warrant's authenticity (a discussion which we shall address more fully in the next section of this opinion) or (2) it would have been unfair to admit the duplicate in lieu of the original.

Under the "Best Evidence Rule," the photocopy of the bench warrant was admissible to the same extent as the original. If applicable, the "Best Evidence Rule" was satisfied.

The case of *Duggins v. State,* 7 Md.App. 486, 256 A.2d 354 (1969), relied on heavily by both defense counsel and the trial court, is not remotely apposite to the situation before us. Our case concerns the lack of any possible distinction as far as the

words on the paper (the contents) are concerned between an original document and a photocopy of that document. *Duggins*, on the other hand, dealt with the very different situation where witnesses were erroneously permitted to testify as to the contents of a document in a case where the document itself was not produced. In a circumstance such as that, there exists the very real possibility that the oral testimony might not replicate with unerring precision the contents of the original document. That is not so with a photocopy.

## Authenticity of the Warrant Not at Issue

During the suppression hearing, defense counsel suggested to the court that she was attacking the authenticity of the warrant as well as its existence when she suggested that the warrant had "not [been] properly completed." The issue sought to be raised by defense counsel by her protestations was not one concerning the contents or terms of the warrant but rather one of whether it was properly issued. That, to be sure, is a totally different type of evidentiary problem. That is an authentication problem and not a "Best Evidence Rule" problem, and dispensing with authentication does not necessarily dispense with production, just as dispensing with production does not dispense with authentication. *See* 4 J. Wigmore, *Evidence* (Chadbourn rev.1972) §§ 1187–88 p. 430. The authentication of a search warrant, that is, the proof of its valid issuance, may be proved by evidence other than the production of the document itself, such as the proffered testimony of the police officer who served the warrant. This type of problem has nothing to do with the "Best Evidence Rule," which is concerned only with the content or terms of the writing, not with the validity of its issuance. *See Thompson*, 62 Md.App. at 210 n. 2, 488 A.2d 995.

Detective Ellingston here testified at the suppression hearing that when he received the bench warrant from Central Records, he examined it and it appeared to him to be a typical bench warrant without any defects. He also verified that after serving the warrant, he signed the "Return of Service" portion on the warrant and that the condition of the

warrant had not changed from the time he signed it. Detective Ellingston's testimony was clearly sufficient to corroborate the authenticity of the bench warrant.

The bench warrant, on its face, was presumptively valid. Although defense counsel was grasping opportunistically at any straw she sensed might be in the wind, she never generated any genuine issue to the effect that 1) the appellant had not been summoned to District Court on May 12, 1998; 2) had not failed to appear in court on that day; 3) had not been in contempt of court by that non-appearance so that the issuance of a bench warrant was unjustified; and 4) the bench warrant found in the Central Records files was, therefore, the product of either fraud or mistake. The appellant failed to suggest any way in which the original bench warrant would have been a bit more probative than the photocopy.

The photocopy of the bench warrant should have been received in evidence and the physical evidence should not have been suppressed.

*JUDGMENT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY APPELLEE.*