# DAVID BRUCE CAMPOFREDA *v.* STATE OF MARYLAND

[No. 21, September Term, 1972.]

*Decided July 7, 1972.*

The cause was argued before ANDERSON, ORTH and GILBERT, JJ.

*Morris Lee Kaplan,* with whom was *Michael Lee Kaplan* on the brief, for appellant.

*James L. Bundy, Assistant Attorney General,* with

whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Edward A. DeWaters, Jr., Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

David Bruce Campofreda was convicted, in a non-jury trial, in the Circuit Court for Baltimore County, of (1) distributing hashish, (2) possession of hashish, (3) possession of marijuana, (4) possession of methadone, and, (5) under an addendum to the indictment, charging appellant as a "third or subsequent offender" of the narcotic laws. The appellant was sentenced to a term of five years for distributing hashish and a five year sentence for possession of methadone, both sentences to be served concurrently. Sentence as to the other counts was generally suspended.

The appellant attacks the judgment of the Circuit Court for Baltimore County on the grounds that:

1. His motion to quash the search and seizure warrant, and to suppress the evidence obtained thereunder, should have been granted.

2. The evidence was legally insufficient to sustain a finding of guilty under the addendum.

Trooper J. T. Kelly, of the Maryland State Police, testified that at approximately 1:30 a.m. on April 6, 1971, he was on a parking lot adjacent to a night club on Harford Road in company with one James Donaldson. At that time a late model Volkswagen came onto the lot. Donaldson excused himself and went over and talked with the driver of the Volkswagen. A short time later, Donaldson returned to where he had left the trooper, and after a brief conversation the two of them, Donaldson and the trooper, went to the appellant's home at 1706 Glen Keith Boulevard, in Baltimore County, Maryland. Soon after their arrival, the appellant obtained a pipe and a quantity of suspected hashish from a bedroom in the apartment in which he resided. The pipe was lit and

passed among the three persons, that is, the trooper, Donaldson and the appellant. The appellant also obtained from a closet in the bedroom a quantity of hashish which he placed in an empty Kool cigarette package. The appellant placed the Kool cigarette package close to Trooper Kelly's feet and Trooper Kelly handed appellant $25.00. On April 8, 1971, the suspected hashish was delivered to the United States Customs laboratory for chemical analysis and later identified to be hashish.

Trooper Kelly further testified that as a result of what had occurred on April 6, 1971, he applied for a search warrant to Judge Kenneth C. Proctor, of the Circuit Court for Baltimore County. The warrant was executed on May 17, 1971, at which time Trooper Kelly and other State police officers seized from appellant's apartment a set of weighing scales, a gray metal box containing pipes and seeds, one large water pipe, incense and an incense burner, a small box containing suspected marijuana, one bent-handled spoon, a set of Maryland temporary auto license plates, a telephone bill, and 2 bottles containing suspected methadone. As a result of the seizure of the marijuana and methadone, appellant was charged with the possession of both substances.

On cross-examination, Trooper Kelly testified that he applied for the search warrant on the 7th day of May, 1971—31 days after the purchase of hashish from the appellant. The trooper explained that the reason he did not arrest Mr. Campofreda in April, 1971 was because he was working as an undercover officer and his investigation had not been completed at that time.

We quote from pertinent parts of the testimony concerning the warrant:

"Q When did you apply for the warrant?
A I applied for the warrant on the 7th of May.
Q How many days after you had been—
A Ten days—oh, after the execution of the warrant or prior to the execution?
Q No. How many days?

A From April 6th to May 7th, approximately thirty days.

Q And when did you execute the warrant?

A On May 17th."

Earlier, the trooper had testified on direct examination:

"As a result of the undercover investigation on April 6th a search and seizure warrant was signed by Judge Proctor for the residence 1706 Glen Keith."

According to the trooper, a list of the inventory seized pursuant to the warrant was returned to Judge Proctor for filing on May 22, 1971. The trooper stated that he left a copy of the list "with Mr. Campofreda or his mother, I can't remember which; I think Sergeant Mazzone filled it out, or left it there * * *." On cross-examination the trooper was asked:

| | |
|---|---|
| "Q | You wouldn't happen to have a copy of that warrant, would you? |
| A | In my case folder. |
| MR. DeWATERS | (Assistant State's Attorney) I've got a copy here. |
| Q MR. KAPLAN: | Who made application for the warrant, you? |
| A | I did, yes, sir. |
| Q | And everything in the application is based upon the alleged sale back on April 6th, is that correct? |
| MR. DeWATERS: | Objection. |
| THE COURT: | The warrant speaks for itself, doesn't it, counsel? |
| MR. KAPLAN: | Yes, your Honor. Would your Honor care to see a copy of it? |
| THE COURT: | I will look at anything that comes into evidence. |

MR. KAPLAN: Sir, could we have a copy of the original warrant?

MR. DeWATERS: It's all right to use this if you want to, I have no objection.

THE COURT: Well, he has identified it as being a copy of the search warrant issued by Judge Proctor. Is that correct?

WITNESS: Yes, sir.

THE COURT: And the application for the warrant?

WITNESS: That's the application and affidavit here. I think the warrant—the return is not attached to this.

MR. KAPLAN: No, it's just the application.

WITNESS: This is the application and the warrant, yes, sir."

Counsel then moved to quash the warrant and all evidence obtained thereunder. The motion was denied.

Art. 27, § 551 of the Maryland Code provides in part:

"Whenever it be made to appear to any judge of the * * * circuit courts in the counties of this State, or to any justice of the peace in this State, by *a written application signed and sworn to by the applicant, accompanied by an affidavit or affidavits* containing facts within the personal knowledge of the affiant or affiants, that there is probable cause, the basis of which shall be set forth in said affidavit or affidavits * * *, then such judge or justice of the peace may forthwith issue a search warrant directed to any duly constituted policeman, constable or police officer authorizing him to search * * *." (Emphasis supplied).

One of the paper writings received into evidence was an "APPLICATION & AFFIDAVIT FOR SEARCH & SEIZURE WARRANT" addressed to:

"The Honorable ........................., ....................., ....................., Baltimore County, State of Maryland."

The body of the "Application and Affidavit" followed thereafter. At the conclusion of the paper writing appears the following:

"SUBSCRIBED AND SWORN TO, this .. ..... day of ..................., in the year of Our Lord, 1971.

........................................

Before me, a ....................... of the State of Maryland, in and for ................... County, this ........ day of ......................., 1971, personally appeared ..............................., personally known to me or properly identified, and he made oath that the contents of the aforegoing document are true and correct.

......................................."

It is patent that the affidavit was not subscribed, or notarized.

The "SEARCH & SEIZURE WARRANT" which was offered into evidence simultaneously with the "Application & Affidavit" was addressed as follows:

"STATE OF MARYLAND
BALTIMORE COUNTY

TO: ............................... Maryland State Police, or any other police officer.

GREETINGS:
WHEREAS, it appears to me, the subscriber, ..............................., ..............................."

The "warrant" authorizes the Maryland State Police or any other police officer to search the premises known as

1706 Glen Keith Boulevard, Baltimore County, Maryland, and to seize any and all "evidence, paraphernalia and money used in or incidental to the conduct or operation of controlled dangerous substance and narcotic violations, found in or upon said premises, persons." This "warrant" then concluded: "GIVEN under my hand this    .. .. day of    .         ... , in the year of Our Lord, 1971" and was *unsigned*.

We fail to perceive how the trial judge could pass upon the validity of the search when neither the warrant nor a completed copy was offered into evidence. The "copy" which the court read appears to us to be no more than a blank copy which may have been completed by Judge Proctor. It may be that Judge Proctor made deletions, alterations, modifications or interlineations on the original warrant, which deletions, alterations, modifications or interlineations could have materially affected the resultant warrant.[1] It also is possible, as counsel for the appellant suggests, that the date of the warrant was different than that stated by the trooper.

In *Giles v. State,* 10 Md. App. 593, 271 A. 2d 766 (1970), we said:

> "A valid search warrant properly executed, may produce evidence sufficient to convict a person accused of crime. A defective and invalid search warrant produces confusion, waste and injustice, to an accused or to society, or to both."

Here, the paper writing offered as the "warrant" was

---

1. In Cornelius, *The Law of Search and Seizure,* § 185, "Duty of prosecution to introduce search warrant in evidence," (1926), it is stated:

> "A conviction cannot be sustained where a search warrant, under which the evidence has been obtained, is not introduced in evidence, where it appears from the evidence that the discovery and seizure * * * was attempted to be justified by the officer's possession of a search warrant the validity of which, though objected to and attacked, was not established by the introduction of the warrant itself, or by proof of its contents."

See also *Cline v. Commonwealth,* 195 Ky. 806, 243 S.W. 1019 (1922).

defective and as a result has produced confusion, waste and injustice. There is nothing in the record before us, other than the trooper's testimony, that the warrant was actually issued, and the trooper's testimony is not sufficient to elevate an unsworn, unsigned copy to the status of an original warrant. It is also within the realm of possibility, as proposed by counsel for the appellant, that the warrant was not executed within the time prescribed by Art. 27, § 551, of the Maryland Code, and, is thus, null and void.[2] However, we cannot say that such is the case. The record is simply devoid of sufficient information upon which to draw such a conclusion.

In *Duggins v. State,* 7 Md. App. 486, 256 A. 2d 354 (1969), this Court was confronted with a situation wherein the State, after proper demand, declined to produce an arrest warrant on the ground that the testimony of Federal agents that they had a valid warrant in their possession when they made the arrest was sufficient to demonstrate the validity of the arrest. The trial court agreed with the State's position. We reversed and remanded the matter on the ground that the best evidence rule was applicable in criminal cases, and as such the original warrant, itself, was the best evidence of the true contents of the warrant. In the instant case, we are not presented directly with the question of the best evidence rule since it was appellant who offered the "copy" of the warrant and no objection was made to its introduction. We observed in *Duggins* that:

> "Appellant's attack on the legality of the federal warrant was not limited to an assertion that its recitals failed to show the existence of probable cause. Rather, his challenge was more broadly based and encompassed, *albeit* in general terms, an assertion that if the warrant ex-

---

2. Art. 27, § 551 provides:
   "* * * that any search or seizure under the authority of such search warrant, shall be made within fifteen (15) calendar days from the date of the issuance thereof and after the expiration of said fifteen (15) day period said warrant shall be null and void."

isted at all, it quite possibly was not properly completed and was therefore legally defective. Under these circumstances, we think it evident that the State cannot overcome the challenge by producing only the testimony of those who procured the warrant to the effect that it did exist and that it was a lawful warrant. Of course, whether the warrant was lawful or not is a matter of law for the determination of the trial judge, a function which he manifestly cannot perform unless he reviews the warrant in light of the objections made to it or, if the warrant is shown to be unavailable for proper reasons, by considering secondary evidence of its existence and contents."

See also *Brooks, Keaton & Patterson v. State,* 13 Md. App. 151, 282 A. 2d 516 (1971).

It was impossible for the trial judge to have determined as a matter of law that the search warrant involved in the instant case was legally proper when he did not see the warrant. It is true that the trial judge had the opportunity to review what was purported to be a "copy" of the original, and perhaps under proper circumstances that "copy" could, by sufficient other secondary evidence, be held to be a proper substitute for the original. *Duggins v. State, supra; Anderson v. State,* 9 Md. App. 532, 267 A. 2d 296 (1970). In the posture in which this record reaches us, however, it is apparent that the appellant's rights have been violated by the failure of the State to produce the original warrant for the trial court's review, and the violation has been compounded by the trial judge's error in accepting the "copy" in lieu of the original, absent sufficient explanation that the original was lost or destroyed.[3] *Anderson v. State, supra;* 2 Wharton, *Criminal Evidence,* § 593.

---

3. If the loss or destruction of the instrument is shown to have been intentional, so as to make it unavailable at the trial, then secondary evidence is not admissible. 1 Jones, *Evidence,* § 1198 (3rd Ed.) *Anderson v. State, supra.*

702

It may well be that on a retrial of this case the State will produce the original warrant, or the "copy" made sufficient by other secondary evidence.

In view of our holding, it is unnecessary for us to discuss the finding of guilty of the multiple offender charge stated in the addendum.

> *Judgments reversed and case remanded for a new trial. Costs to be paid by the County Council of Baltimore County.*