776 A.2d 99

**Tiara Cardell THOMPSON,**

v.

**STATE of Maryland.**

**No. 2021, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

July 9, 2001.

502

Michael R. Braudes, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Devy Patterson Russell, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Jack Johnson, State's Attorney for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before HOLLANDER, KRAUSER and RAYMOND G. THIEME, Jr. (Ret'd, Specially Assigned), JJ.

RAYMOND G. THIEME, Jr., Judge, Retired, Specially Assigned.

Appellant Tiara Cardell Thompson was convicted by a jury in the Circuit Court for Prince George's County of second degree murder and use of a handgun in the commission of a crime of violence. Thompson appeals from his convictions and presents the following questions for our review, which we have rephrased slightly:

1. Did the trial court err in denying appellant's motion to suppress?

2. Did the trial court err in imposing a ten-year term of probation, effective upon completion of appellant's prison sentence?

### Facts and Proceedings

On November 11, 1999, Prince George's County police officers executed a search of Thompson's apartment located at 4869 St. Barnabas Road in Temple Hills. The police seized thirty-nine cartridges consistent with bullets recovered from the body of Clifford Bell, who previously had been murdered. The cartridges found in Thompson's bedroom also were consistent with cartridge casings that had been discovered near the location of the shooting. Thompson was subsequently charged with the murder of Bell and of use of a handgun in the commission of a crime of violence.

Appellant moved to suppress the physical evidence found in his apartment on the basis that the State had failed to prove that the search of his apartment was conducted pursuant to a valid warrant. An initial hearing regarding appellant's motion to suppress was held on June 21, 2000. The State was unable

to produce the signed warrant upon which the search of appellant's apartment was based. Therefore, the State called to the stand Detective William Wilson, who was the police officer who claimed to have obtained the warrant from the issuing judge. Prior to the testimony by Detective Wilson, the trial judge spoke for purposes of the record regarding what would be State's Exhibit 1:

> Madam Clerk, I have—so the record is clear, I have opened the envelope containing a—that has written on it the words, "Search warrant, Judge Robert J. Woods, Detective W. Wilson, ID Number 1634."

> \* \* \* \* \*

> In the envelope that I opened in open court pursuant to the standard procedure is a document that has one, two, three, four, five pages. The first page has a title application.

> It says, "In the Circuit Court for Prince George's County, in the District Court of Maryland, District Five, Application for Search Warrant." It says, "The affiant hereby makes application to," and there's a line drawn to be filled in but it is not filled in.

> Page two is—has no markings other than what's typed on there. Page three has no markings other than what's on there. Page three is entitled at the beginning first page or the only page, first and only page of something called a search warrant, unsigned and undated, except it has the month of November typed in.

> \* \* \* \* \*

> The fourth page is the—the third page is the application, but it appears after the search warrant itself, which is unexecuted, at least on this copy. Okay? The fifth page is a return that's blank and has not been filled in or signed by anybody.

State's Exhibit 1 then was introduced. Appellant subsequently objected to any proposed testimony by Detective Wilson, arguing that the officer's testimony violated appellant's constitutional rights. Appellant contended that the

State had failed to produce the warrant and therefore the authenticity of the warrant had not been established. The trial judge overruled appellant's objection, but stated: "You can have a continuing objection to his testimony in its entirety on the grounds that it's unconstitutionally received and that it's irrelevant." Subsequently, appellant was also granted "a continuing objection to all physical evidence that was taken as a result of the search in this chase [sic] on the grounds as previously stated."

The following testimony was given by Detective William Wilson:

Q: Do you recall what date that you applied for that warrant?

A: I believe it was November 10th or the 11th. I'm not exactly sure which date it was.

THE COURT: Of what year, sir?

A: Of '99. I'm sorry.

\* \* \* \* \*

Q: What judge do you recall appearing in front of to have the warrant—the search warrant when you made application?

A: I believe it was Judge Woods.

\* \* \* \* \*

Q: After you signed it and swore to it in the presence of Judge Woods, what, if anything, did you observe Judge Woods do to the warrant?

A: He signed it.

Appellant's counsel subsequently cross-examined Detective Wilson. The Detective recalled going to Judge Woods's home one evening in order to have the search warrant signed. This dialogue followed:

Q: And who else was with you when you went to his home in the evening?

A: I don't recall if anyone else was with me.

Q: And approximately what time was it in the evening?

A: It was dark outside. I don't recall exactly what time it was, but I know it wasn't past midnight, but it was definitely later in the evening after dinner.

\* \* \* \* \*

Q: Where does he live?

A: I believe it's in Bowie or Upper Marlboro. I believe his house, if I recall it correctly, sits-I don't recall the street name, but I remember pretty distinctly that there are big power lines that you can see from his home at the end of his street.

Shortly thereafter, appellant's counsel asked Detective Wilson about the execution of the search warrant at appellant's apartment:

A: It was later in the evening. I believe it was on the 11th about 10 or 11 o'clock at night.

\* \* \* \* \*

Q: And how much—and it was on November the 11th that you presented the search warrant to Judge Woods?

A: I don't recall if it was the 10th or the 11th. I believe it was one of those days, yeah.

Q: Okay. The [murder] in this case is alleged to have happened on November 10th at approximately 3:55; is that correct?

A: Yes.

Q: Okay. And did you go to Judge Woods's home on the day of the incident?

A: I don't believe so, no.

Q: Did you—do you recall if it was the following day or after that?

A: Well, if this occurred on the 10th then I don't believe that [it was] the day that this happened, because we did interviews and were there late. Then it was probably more likely the 11th that it was signed.

Detective Wilson's testimony established that he did not make any copies of the signed warrant, and that he also did

not know of anyone else who had made copies.  The testimony also provided the following:

Q: Do you have any notes from that time period which verify that you left—that Judge Woods signed the search warrant?

A: No, I don't.

\* \* \* \* \*

Q: Did you keep records of Judge Woods being the judge who signed the search warrant?

A: No, I did not.

Q: Do you have any records which indicate when and where you took the signed search warrant after the search was executed?

A: No. No, I don't.

Emily Marie Joiner, appellant's mother, also testified at the initial suppression hearing.  The police officers who executed the warrant at appellant's apartment had presented her with the warrant and related documents.  She testified that she was shown three or four pages, but none of the documents was signed.  She then said that the police had retrieved all but one of the documents from her shortly thereafter.[1]

The trial court subsequently granted Thompson's motion to suppress because the State had failed to prove by a preponderance of the evidence that the search of appellant's apartment had been conducted pursuant to a valid warrant.  The trial judge stated, however, that he would consider a motion for reconsideration of this ruling if the State brought forth new evidence.

Trial began on June 26, 2000.  After the jury had been sworn, the trial judge heard motions arguments outside of the presence of the jury.  The State requested that the motion to suppress hearing be reopened, announcing that it had additional witnesses to call to the stand:  Judge Robert J. Woods,

---

1.  It was not established at the suppression hearing exactly which of the documents had been left with her.

who was the applicable emergency duty judge in November of 1999; Carol Ann Herbert, who was Judge Woods's secretary; and Robert McDaniel, an evidence technician.[2] After the State made a proffer as to what information would be adduced by these witnesses, the trial court reopened the hearing.

Judge Woods testified by phone from his chambers. He examined a copy of the search warrant that was contained in State's Exhibit 1, which had been presented to him earlier. This colloquy followed:

Q: Do you have any specific recollection of signing that warrant back in November of 1999 when you were emergency duty judge?

A: Those type [sic] of warrants are not unusual, but I have no specific recollection of signing that particular warrant.

Q: If the warrant that you have reviewed had been presented to you, what, if anything, would you have done?

A: If that particular warrant had been presented to me as the duty judge, I would have signed it.

Q: After signing that warrant at home one evening, what would have been your procedure? What would you have done following that?

A: I would probably have taken it into the office the next day. If it was Friday I would have taken it into the office on Monday, and given it to my secretary, Carol Ann.

\* \* \* \* \*

Q: If you had not signed that warrant when you were presented it by the police officer, would you still have brought a copy in to your secretary?

A: I probably would have, but I would have told her that it was presented, but not signed. I don't recall specifical-

---

**2.** We will discuss testimony by Judge Woods and Carol Ann Herbert; testimony by Robert McDaniel, however, is not relevant to our discussion here.

ly not signing any warrants. I would have signed the warrant on its face as given.

In an attempt to corroborate testimony by Detective Wilson at the initial suppression hearing regarding power lines near Judge Woods's home, the following was adduced:

Q: Are you aware of any big power lines near your home?

A: Near my home?

Q: Yes.

A: No. There are power lines, you know, crossing the highway of 202, and all of that, but not right around the house, no, that I know of.

\* \* \* \* \*

A: ... That would [be] a mile or so away, at lease [sic].

\* \* \* \* \*

A: ... The best I can recollect, there are none right around here. There are power lines that cross 202, but I can't remember exactly where.

Carol Ann Herbert was then called as a witness by the State. She was shown State's Exhibit 2, which was a brown envelope on which there was writing. She testified that on the envelope was written, in her handwriting: "Search warrant, Robert J. Woods, Detective Robert J. Wilson, number 1634." This dialogue subsequently ensued:

Q: Under what circumstances would you have put that handwriting on the outside of State's Exhibit No. 2?

A: Normal procedures in our chambers is when the judge reviews a search warrant, and he issues it, I put it in a brown envelope, I label it "Search Warrant," and the officer's name, and I take it to the Clerk.

Q: Do you know what the Clerk does with it once they [sic] receive it?

A: The Clerk, they take it, and they put it in a locked drawer.

\* \* \* \* \*

Q: Now, there are some contents inside State's Exhibit No. 2.

A: Okay.

Q: Would you be familiar with those? Would you have looked at the warrant?

A: Not necessarily.

\* \* \* \* \*

The trial judge pointed out that whether a warrant had been properly issued could be proved by extrinsic evidence without the production of the warrant itself, and he then turned his attention to Md. Rule 5–1008, which provides:

(a) *Generally.* Except as otherwise provided in section (b) of this Rule, when the admissibility of evidence other than the original of contents of writings, recordings, or photographs under these rules depends upon the fulfillment of a condition of fact, the question whether the condition has been fulfilled is for the court to determine in accordance with the provisions of Rule 5–104(a).

(b) *Exceptions.* The following issues, if raised, are for the trier of fact to determine as in the case of other issues of facts: (1) whether the asserted writing, recording, or photograph ever existed, (2) whether another writing, recording, or photograph produced at trial is the original, or (3) whether evidence of contents other than the original correctly reflects the contents.

The trial judge concluded that, pursuant to Md. Rule 5–1008, it was for the jury to determine whether the warrant had actually been signed by a judge. In relevant part, the trial judge stated:

Interestingly enough, we get to 1008, and subparagraph (a), except as otherwise provided in section (b) of this rule, when the admissibility of evidence other than the original of contents of writings, and that is what we are talking about, we are talking about other than the original of contents of writings, which is what we are talking about being the signature, we are not talking about recordings or photo-

graphs, under these rules depends upon the fulfillment of the condition of fact, whether the condition has been fulfilled is for the court—that is this judge in this case—to determine whether under conditions of 5–104(a), which we already talked about, and that 5–104(a) is for the questions of admissibility in general.

Now, the next section is the one that the court has recently directed its attention to, and it says, "The following issues, if raised, are for the trier of fact—" in this case that would be the jury—"to determine as in the case of other issues of fact, and they are, one, if the asserted writing, recording or photograph ever existed."

That is what we are talking about. We don't know where the original is. The question is, I believe this is a copy of the search warrant, and I so hold, in light of a lack of a better way to characterize it, in exercising my function under 5–1008.

I am reading from 5–1008, "The following issues, if raised, are to be determined whether the writing, recording or photograph ever existed."

The issue is whether the original, signed by Judge Woods, or any other judge, and I need not make that determination, ever existed.

The trial judge went on to deny appellant's motion to suppress, stating that "the basis for that is Maryland Rule 5–1008." After commenting on the testimony and exhibits presented at the hearing, the trial judge concluded by stating:

Whether any of this will come into evidence will be determined at the trial, and that is, while you haven't convinced me that the—the issue is whether or not the writing, again, signed by a judge, and I am reading from the rule, whether the asserted writing, a search warrant signed by a judge, ever existed, signed by a judge. This is the question, did it ever exist or not, and if it did, was it served, and it was served, the return will be submitted, under rule 5–1008(b), to the jury with the appropriate instruction, if requested, for their determination.

That is the ruling.

Although the trial judge had made his ruling, the next day there was further discussion on the matter. The trial judge once again considered the issue, and explained the basis for his finding:

We know it existed in blank form. That has come into evidence. The question is whether it existed in an executed form, and whether it was—after it was executed, was it then served, and was there a return also executed?

\* \* \* \* \*

I am not leaving the issue of whether or not the search was constitutional to the jury. I am leaving the issue of whether or not the document signed, three documents, the affidavit, in support of the application, the search warrant itself, and the return ever existed, in the language of the rule, and so I am treating—we will call this a motion to reconsider the ruling, and if you wanted to be heard further, and I will let you.

\* \* \* \* \*

*I have not decided that there was an executed warrant.* I said this to parties in chambers. . . . I have said to counsel, you need to provide me with instructions . . . but the issue *I am going to have the jury determine under Rule 5–1008 is the factual question of whether the asserting writing, i.e., underline, the executed search warrant and affidavit in support of the application and the return ever existed.*

And my reading of the rules together is that that is a question which 5–1008 says [is] for the trier of fact, and that is . . . the jury.

This appeal followed.

### Discussion

### I.  Validity of Search Warrant

#### Signature by Issuing Judge

Thompson asserts that "there was no finding by the judge that there had been a properly signed and executed warrant."

He therefore contends that the items recovered pursuant to the search of his apartment were "admitted in error." Our review of the record indicates that the trial judge essentially intended to leave to the jury the preliminary determination as to the validity of the search warrant. The jury never specifically considered this issue, however, as no jury instruction was presented on this matter.[3]

Thompson and the State agree that the trial judge erred by deferring to the jury the determination of the validity of the search warrant.[4] We note the State's concession that "the delegation of the issue to the jury regarding the validity of the search warrant was error." The parties depart from their agreement, however, in positing a remedy. Thompson insists that the failure by the trial judge to rule on the validity of the search warrant is cause for a reversal of his convictions and a grant of a new trial. On the other hand, the State argues that the correct remedy would be a limited remand whereby we would instruct the trial court "to determine whether in fact the search warrant was properly issued." As we will explain herein, we think that the suggestion posed by the State represents the appropriate solution.

"It is firmly established that the admissibility of evidence claimed to have been obtained by an unreasonable search and seizure warrant claimed to be invalid is a matter exclusively for the trial court." *Hepple v. State,* 31 Md.App. 525, 554, 358 A.2d 283 (1976) (citations omitted). In *Cleveland v. State,* 8 Md.App. 204, 207, 259 A.2d 73 (1969) (citation omitted), we

---

3. During trial, the trial judge had presented appellant's counsel with an opportunity to pose a jury instruction on the validity of the search warrant. Appellant's counsel, however, for tactical reasons which are reflected in the record, chose not to have the jury instructed on this issue. The warrant and its related documents were never published to the jury, although they were made a part of the record for purposes of review. The decision by appellant's counsel is irrelevant in our analysis, as our focus is on whether events ever should have reached that point and whether the trial judge erred by not himself determining during the suppression hearing whether the search warrant was valid.

4. The State, we think quite appropriately, does not contend that there existed an exception to the warrant requirement in this case.

noted that "[t]he basic rule is that the admission or exclusion of evidence is within the sound discretion of the trial court." We also said in *Cleveland:*

> We see nothing in the Rule from which we could conclude that after the court has found that the evidence seized was admissible, the jury has the ultimate determination of whether or not the search or seizure was reasonable. Thus if the property was obtained under a search and seizure warrant, the affidavit on which the warrant is based does not go to the jury; if the property was obtained by a search or seizure incident to an arrest, evidence as to probable cause for the issuance of an arrest warrant or for a warrant-less arrest does not go to the jury; if the property was obtained without a search warrant or an arrest, evidence as to the reasonableness of the search and seizure does not go to the jury.

*Id.* at 208–09, 259 A.2d 73.

In *Winebrenner v. State,* 6 Md.App. 440, 444, 251 A.2d 610 (1969), we cited Md. Rule 729, *see infra,* and stated that "if [a] case is being tried before a jury, the hearing on the motion to suppress or exclude the evidence or on the objection to the evidence shall be out of the presence of the jury."

We recognize that the rationale for our holdings in *Wine-brenner* and *Cleveland* were based partially on Md. Rule 729, which has since been rescinded.[5] Nevertheless, we pointed

---

**5.** The Court of Appeals adopted Md. Rule 729 in June of 1967 to clarify the procedure to be followed in cases in which the legality of a search and seizure is questioned. That rule, in relevant part, provided:

  a. *Scope.*

    This Rule shall be applicable whenever property is claimed in a court to have been obtained by an unlawful search or seizure even though the offense charged or threatened to be charged may not be within the exclusive jurisdiction of a court or even though the search warrant, pursuant to which the property was seized, may not have been issued by a court. . . .

  d. *Hearing.*

  1. Before Trial.

    When a motion is filed pursuant to subsection 1 of Section b of this Rule, at least five (5) days prior to the trial date, or if a petition is

out in *Cleveland* that our conclusion in that case was based on the principle that "Rule 729 recognized and adhered to the basic rule of law that the admissibility of evidence was a matter of the trial court's sound discretion." *Id.* at 208, 259 A.2d 73. We ultimately concluded on this issue in *Cleveland:*

We hold that the admissibility of evidence obtained by any search or seizure claimed to be invalid is a matter exclusively for the trial court. If the evidence is found by the trial court to have been unlawfully obtained, it shall be excluded. In a jury trial, if the evidence is found by the trial court to have been lawfully obtained, it shall be submitted to the jury and no evidence pertaining to the legality of the seizure shall be presented to the jury. The jury considers the evidence so admitted, along with other evidence before them, in arriving at their verdict. Thus the trial court here, having found the arrest of the appellant to be legal, did not err in refusing to instruct the jury as requested with regard to the validity of the appellant's arrest and the admissibility of the evidence seized incident thereto.

*Id.* at 213, 259 A.2d 73.

Rule 729 did not create the basic principle of law on which it was based; rather, Rule 729 was adopted in accordance with the basic law that had already been established. As such, Rule 729 merely codified what the law was before its enactment, and what still remains the law regardless of its rescission. To confirm this point, we look to *Farrow v. State*, 233 Md. 526, 197 A.2d 434 (1964), a case decided by the Court of

---

transferred pursuant to subsection 3 of section b of this Rule, the trial shall not commence *until the motion or petition has been determined by the court.*

2. Other Cases.

*In all other cases the court shall have discretion to determine the motion as a preliminary matter or during trial. If the case is being tried before a jury the hearing on the motion, or on an objection to the introduction of evidence alleged to have been obtained by an unlawful search or seizure, shall be out of the presence of the jury.*

. . .

*Id.* (emphasis added).

On January 31, 1977, the Court of Appeals ordered Md. Rule 729 rescinded, effective July 1, 1977.

Appeals *prior* to the adoption of Rule 729. In *Farrow,* the Court said:

[T]he determination of the admissibility of evidence which is dependent upon the lawfulness of an arrest should be made by the trial judge as a preliminary matter quite apart, of course, from the question of the guilt or innocence of the accused; and if the case is being tried before a jury, such a matter should be heard out of the presence of the jury.

*Id.* at 533, 197 A.2d 434.

The present case involves the lawfulness of a search and seizure of physical evidence, while *Farrow* involved the lawfulness of an arrest; nonetheless, the above-quoted language by the Court is instructive as it speaks to the role of the trial judge, rather than that of the jury, in determining such preliminary matters.

Perhaps most dispositive on this issue is our decision in *Robinson v. State,* 4 Md.App. 515, 243 A.2d 879 (1968). We decided *Robinson* after Rule 729 had been promulgated; however, the appellant's trial had taken place prior to the adoption of the Rule. We discussed Rule 729, and then we said:

The rule was not effective at the time of the appellant's trial, *but the substance of it was the preferred procedure prior to its adoption. It was established before the rule was adopted that the determination of the admissibility of evidence which is dependent upon the lawfulness of an arrest should be made by the trial judge as a preliminary matter quite apart from the question of the guilt or innocence of the accused.* "If the case is being tried before a jury, such a matter should be heard out of the presence of the jury." *Farrow v. State,* 233 Md. 526, 533, 197 A.2d 434. Nor was it essential prior to the effective date of the rule, that a motion to suppress the evidence be made prior to trial. A motion to suppress the evidence and objection to its introduction at trial preserved a defendant's basic constitutional right. *Shrout v. State,* 238 Md. 170, 174[, 208 A.2d 585 (1965) ]. In the instant case we think the trial court erred in not

determining the matter of the admissibility of the challenged evidence out of the presence of the jury.

*Id.* at 521–22, 243 A.2d 879 (emphasis added).

In accordance with our discussion thus far, we point out that we do not share in the trial judge's opinion that Md. Rule 5–1008 is necessarily dispositive in this case. Thus, we emphasize that we reach our decision on this issue without application of Md. Rule 5–1008. Nevertheless, even if it were found to be applicable, we think that the trial judge misinterpreted its application as it pertained to the facts of this case. The issue before the trial judge in the present case was more akin to a condition of fact to be decided by the judge rather than a determination for the jury as to whether a document actually existed. Whether there existed a document purporting to be the warrant was not in question; rather, the issue pertained to the conditions of fact as to whether the warrant was signed and dated.

In support of this assessment, we point to several instances whereby it is indicated that the existence of the document had in fact been determined. While articulating his finding during the hearing on the reconsideration of his initial granting of Thompson's motion to suppress, the trial judge said: "I find that the State has proven by a preponderance of the evidence, and I frankly wasn't in too much doubt before that this document is a search warrant." The trial judge then went on to remark that "the issue is whether it was executed or not." We observe that such language is clearly inconsistent with any question as to whether the document actually existed. Whether a document was signed only can become an issue once it has been established that a document actually exists. As we have already mentioned, a discussion ensued during trial regarding the search warrant, at which time the trial judge made no new determinations, but rather elucidated his prior ruling regarding the search warrant as it pertained to the suppression of evidence. At that time, the trial judge stated: "We know it existed in blank form. That has come into evidence. The question is whether it existed in an executed form . . . ." The language used by the trial judge on this matter

indicates to us that it was not the actual existence of the warrant that was in question, but whether that warrant had been signed. We would consider such a question to be a condition of fact that would have been appropriately determined by the trial judge during a suppression hearing

In *Duggins v. State,* 7 Md.App. 486, 256 A.2d 354 (1969), the appellant challenged the legality of the arrest warrant on which his arrest was based and demanded its production so that the court, in assessing the constitutional validity of the arrest, could pass on the legality of the warrant. The State declined to produce the warrant, taking the position that the testimony of the federal agents that they had a valid warrant in their possession at the time of the arrest was sufficient evidence of itself to demonstrate the validity of the arrest. *Id.* at 487–88, 256 A.2d 354. The trial court agreed with the State's position, and the jury subsequently convicted the appellant. Challenging the existence of the warrant, the appellant contended "that if the warrant existed at all, it quite possibly was not properly completed and was therefore legally defective." *Id.* at 490, 256 A.2d 354. Reversing and remanding, we wrote:

> Under these circumstances, we think it evident that the State cannot overcome the challenge by producing only the testimony of those who procured the warrant to the effect that it did exist and that it was a lawful warrant. *Of course, whether the warrant was lawful or not is a matter of law for the determination of the trial judge,* a function which he manifestly cannot perform unless he reviews the warrant in light of the objections made to it or, if the warrant is shown to be unavailable for proper reasons, by considering secondary evidence of its existence and contents. As the trial judge followed neither course, we hold that he erred in finding appellant's arrest to be lawful.

*Id.* (emphasis added).

Our decision in *Duggins* was made on the basis of the best evidence rule, as we found that the original warrant itself was the best evidence of the true contents of the warrant. Al-

though we are not directly interested in the best evidence rule in the present case, we nevertheless think that the language we quoted from *Duggins* is instructive in this case.

Having just raised the issue, albeit in passing, we cannot resist our temptation to address briefly the best evidence rule as it pertains to the instant case. Although not raised by either party to this appeal, and thus not a consideration in our decision, for the sake of completeness we elucidate why the so-called "Best Evidence Rule," which is more appropriately referred to as the "Original Document Rule," *Thompson v. State*, 62 Md.App. 190, 208, 488 A.2d 995 (1985), is inapplicable here.

We have said that the Rule applies as follows: "[I]n proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent." *State v. Brown*, 129 Md.App. 517, 522, 743 A.2d 262 (1999). We have said that, in regard to the Rule, "[a]ll that is required ... is that the best *obtainable* evidence be produced." *Thompson*, 62 Md.App. at 212, 488 A.2d 995. On this point, we note that it was verified during the suppression hearing in the instant case that the original warrant was unavailable. It was not established that this was a result of the serious fault of the State. "Under the circumstances, secondary evidence is always to be preferred over no evidence at all." *Id.* at 213, 488 A.2d 995.

Additionally, in *Brown*, we said that "the rule does not apply to exclude evidence offered to show the existence, execution, or delivery of a writing, recording, or photograph." *Brown*, 129 Md.App. at 522–23, 743 A.2d 262 (citation omitted). Here, it is not the contents of the warrant that are being contested, as appellant claims no inaccuracies within the writing itself. Rather, he challenges the validity of its execution. On this point, we said the following in *Brown*:

> During the suppression hearing, defense counsel suggested to the court that she was attacking the authenticity of the warrant as well as its existence when she suggested that

the warrant had "not [been] properly completed." The issue sought to be raised by defense counsel by her protestations was not one concerning the contents or terms of the warrant but rather one of whether it was properly issued. That, to be sure, is a totally different type of evidentiary problem. That is an authentication problem and not a "Best Evidence Rule" problem, and dispensing with authentication does not necessarily dispense with production, just as dispensing with production does not dispense with authentication. *See* 4 J. Wigmore, Evidence (Chadbourn rev. 1972) §§ 1187–88 p. 430. The authentication of a search warrant, that is, the proof of its valid issuance, may be proved by evidence other than the production of the document itself, such as the proffered testimony of the police officer who served the warrant.[6] This type of problem has nothing to do with the "Best Evidence Rule," which is concerned only with the content or terms of the writing, not with the validity of its issuance. *See Thompson*, 62 Md. App. at 210 n. 2, 488 A.2d 995.

*Brown*, 129 Md.App. at 528, 743 A.2d 262.

Another case helpful to us is *Campofreda v. State*, 15 Md.App. 693, 292 A.2d 703 (1972), which looked to our decision in *Duggins*, but did not deal directly with the best evidence rule.[7] Evidence seized pursuant to a search warrant led to appellant's convictions of various narcotic violations involving possession and distribution. The affidavit for the search warrant was unsigned and not notarized, and the warrant itself was unsigned as well. *Id.* at 698–99, 292 A.2d 703. Appellant challenged the validity of the search warrant, and we ultimately reversed the convictions by the trial court.

---

6. That is not to say that the proffered testimony by a police officer who served the warrant, without more, suffices to prove that the warrant in question was signed by a judge. The testimony by a police officer in such circumstances is more appropriately categorized as *one* of the things that generally must be established in order to prove the valid issuance of a warrant in such a case. (*See infra* for further discussion.)

7. We note that *Campofreda* was a non-jury trial; nevertheless, it provides guidance for the present case.

Reflecting upon circumstances similar to those with which we are presented in the instant case, we wrote:

> We fail to perceive how the trial judge could pass upon the validity of the search when neither the warrant nor a completed copy was offered into evidence. The "copy" which the court read appears to us to be no more than a blank copy which may have been completed by [the alleged issuing judge]. It may be that [the alleged issuing judge] made deletions, alterations, modifications or interlineations on the original warrant, which deletions, alterations, modifications or interlineations could have materially affected the resultant warrant. It also is possible, as counsel for the appellant suggests, that the date of the warrant was different than that stated by the trooper.
>
> * * * * *
>
> Here, the paper writing offered as the "warrant" was defective and as a result has produced confusion, waste and injustice. There is nothing in the record before us, other than the trooper's testimony, that the warrant was actually issued, and the trooper's testimony is not sufficient to elevate an unsworn, unsigned copy to the status of an original warrant.

*Id.* at 699–700, 292 A.2d 703 (footnote omitted).

We concluded in *Campofreda:*

> It was impossible for the trial judge to have determined as a matter of law that the search warrant involved in the instant case was legally proper when he did not see the warrant. It is true that the trial judge had the opportunity to review what was purported to be a "copy" of the original, and perhaps under proper circumstances that "copy" could, by sufficient other secondary evidence, be held to be a proper substitute for the original.... In the posture in which this record reaches us, however, it is apparent that the appellant's rights have been violated by the failure of the State to produce the original warrant for the trial court's re-

view.... [8]

*Id.* (citation omitted).

■ We find on this issue that it was the task of the trial judge to determine whether the warrant was signed by an issuing judge. It certainly can be correctly asserted that the basic concept as to whether the warrant was signed is a factual determination. Nonetheless, this differs from the typical factual determination that generally goes to the jury. We have before us a motion to suppress evidence claimed to have been unlawfully obtained. Thus, we are presented with questions as to the admissibility of evidence and the validity of a search warrant pursuant to which such evidence was based. Such matters are preliminary findings to be made by the trial judge, regardless of whether it be at trial or prior to trial, and regardless of whether it be a jury trial.

■ In sum, the failure by the trial judge to determine whether the warrant was validly signed by an issuing judge constituted error. We think that the proper course of action is to remand for the trial judge to make the determination as to whether the warrant was issued by a judge.[9]

■ Certainly, it is no simple task with which the trial judge is presented. It is well-established that the burden is on the State to demonstrate that the search of appellant's apartment was pursuant to a valid warrant. In order for the warrant to have been valid, it must have been, among other things, signed by an issuing judge. In nearly every case

---

**8.** We went on to say: "and the violation has been compounded by the trial judge's error in accepting the 'copy' in lieu of the original, absent sufficient explanation that the original was lost or destroyed." We note that that situation is not present here, as it was established that the original could not be found. Thus, we do not now concern ourselves with this part of our rationale in *Campofreda;* we are only concerned with the initial possible violation whereby the State has not produced the original warrant.

**9.** Pursuant to our discussion in the next section of this opinion, entitled *"Date of Issuance,"* our remand not only pertains to whether the warrant was signed by an issuing judge, but, additionally, as to whether a date for the issuance of the warrant is ascertainable.

involving a search warrant, this finding is essentially a formality and is almost never a critical factor. Generally, the signature by the issuing judge is present, and nothing further need be proved on this point.

In this case, however, the State was unable to produce an original or copy of the warrant that was signed by an issuing judge. All was not lost at this point, though, as the trial judge found, and we agree, that the signature could be proved by extrinsic evidence. The State attempted to accomplish this end through the testimony of several people: the police officer who claims to have obtained the issuance of the warrant, the judge that was alleged to have issued the warrant, and that judge's secretary.

We have conducted a thorough review of the entire record in this case; unfortunately, we can only conclude from the record that the officer's testimony was quite shaky. That certainly is not to say that we disbelieve his testimony. In fact, our belief as to his credibility is irrelevant. It is well-settled that it is not our function to assess the credibility of witnesses. Such determinations during a suppression hearing are quite obviously to be made by the trial judge. We say that the testimony was shaky not because it appears incredible, but rather because it does not seem that the officer commanded a formidable recollection of many critical specific facts pertaining to the circumstances in question. The testimony by Detective Wilson does not seem to have conclusively established whether Judge Woods signed the warrant. Obviously, we are deeply troubled by the handling of the warrant in this case. A man has been convicted of very serious crimes, while there seemingly remain countless questions about the circumstances involving the search warrant—normally only formalities that are supposed to be rather routine in nature. It is disturbing that the officer possessed not even notes on which he could rely at the hearing in order to refresh his recollection—a recollection that certainly could have been aided by being refreshed in some manner.

There was also testimony by Judge Woods, who is alleged by the State to have been the judge who issued the warrant. His testimony essentially failed to establish whether he did in fact issue the warrant in question. He testified that he was the duty judge for some of November of 1999, but that in and of itself failed to establish conclusively anything regarding the subject circumstances. He did not recall ever having been presented with this warrant, and made no reference to any specific recollection regarding the circumstances in question. His testimony that he would have signed the warrant if it had been presented to him is certainly not conclusive, for that begs the question as to whether the officer in fact presented the warrant to him, and, if so, whether it contained precisely the same information then as it did during the judge's testimony at the suppression hearing.

In *Brown*, we said that a detective's "testimony was clearly sufficient to corroborate the authenticity of the bench warrant." *Brown*, 129 Md.App. at 529, 743 A.2d 262. In that case, the testimony by the detective was only called upon to *corroborate*, and not to *establish*, the validity of the warrant in question. We once again revisit **our decision** in *Duggins* on this point. As we have alluded to, *supra*, we said in *Duggins*:

Appellant's attack on the legality of the federal warrant was not limited to an assertion that its recitals failed to show the existence of probable cause. Rather, his challenge was more broadly based and encompassed, *albeit* in general terms, an assertion that if the warrant existed at all, it quite possibly was not properly completed and was therefore legally defective. Under these circumstances, We think it evident that the State cannot overcome the challenge by producing only the testimony of those who procured the warrant to the effect that it did exist and that it was a lawful warrant.

*Duggins*, 7 Md.App. at 490, 256 A.2d 354 (footnote omitted).

We do not go so far as to say that testimony by the officer that procures a warrant could *never* suffice to prove its valid issuance. Rather, we find that, even if such testimony could ever suffice under specific circumstances, it certainly seems

very tenuous that Wilson's testimony in this case, given its lack of solid recollection and definitiveness, would be an example of such.

The only other testimony presented that was relevant to the State's assertion regarding the issuance of the warrant was that by Carol Ann Herbert. But it seems that her testimony also presented little substantial value regarding the issuance of the warrant. Her testimony seemed to speak more to general procedures that were typically followed, and established very little concerning the particular facts in question. It was established that it was indeed her handwriting on the envelope that originally contained the warrant; however, the writing on the envelope involved general procedures, and Ms. Herbert did not speak as to the circumstances present when she wrote on the envelope. Judge Woods had testified that he would normally return a warrant to his secretary *even if he did not sign it.* Based on that testimony, it does not seem beyond the realm of possibility that this is precisely what occurred here.

■ We present the State with a further opportunity to bring forth evidence with which to aid the trial judge in the decisions he is called upon to make regarding whether the State has met its applicable burden in this case. We remand for a limited suppression hearing for the determination as to whether the warrant was signed by an issuing judge. If the trial judge cannot find that the warrant was indeed signed by an issuing judge, then the warrant shall be held invalid, and any evidence obtained based on it must be suppressed.

### Date of Issuance

Another point we must address concerning the validity of the search warrant is the fact that the warrant was undated.[10] Although Thompson makes no mention of this issue in his appeal, we nonetheless consider it. During the original mo-

---

10. The warrant in question is a one-page document. The following is found at the bottom of the page: "GIVEN UNDER MY HAND THIS ____ DAY OF NOVEMBER 1999." The only item following these words was a line for the issuing judge's signature, which was left blank.

tion to suppress hearing, and again at the reconsideration hearing thereof, appellant's counsel repeatedly argued that the search warrant was invalid because it was undated. We think that, in this context, this issue goes hand in hand with the question of whether the warrant was actually issued by a judge, and we find considerable merit to the matter.

Md.Code (1957, 1996 Repl.Vol.), § 551 of Article 27 provides "that any search or seizure under the authority of such search warrant, shall be made within 15 calendar days from the date of the issuance thereof and after the expiration of the 15 day period said warrant shall be null and void." This section, however, does not actually involve the Exclusionary Rule, as it was enacted as a means of protecting property seized. Indicating such is the following language within § 551: "If, at any time ... it appears ... that the property was taken under a warrant issued more than 15 calendar days prior to the seizure, said judge must cause it to be restored to the person from whom it was taken." Nowhere within the section is there mention of exclusion of evidence because of the State's violation of this provision.

In *Hill v. State,* 134 Md.App. 327, 345, 759 A.2d 1164 (2000), we said that "it is clear that suppression of the seized evidence was not a possible remedy for [a violation of § 551], in any event. Section 551 does not remotely involve, explicitly or implicitly, the Exclusionary Rule of evidence." (citations omitted), *cert. denied* 362 Md. 188, 763 A.2d 735 (2000). In *Pearson v. State,* 126 Md.App. 530, 730 A.2d 700 (1999), we noted:

[T]he remedies of § 551 are confined to the restoration of property seized under a search warrant. There is no sanction of exclusion of evidence for a violation of § 551, ... and such a sanction would be proper only when a violation of the statute coincidentally is also a violation of the Constitution.

*Id.* at 544, 730 A.2d 700 (citations omitted).

The Court of Appeals, in *Bell v. State,* 200 Md. 223, 88 A.2d 567 (1952), addressed an appellant's claim as to an invalid warrant based on the fact that it was undated:

The search warrant was dated "this—day of June," 1951. It recites watchings of the premises on June 16, 1951 and June 18, 1951. The affidavit was dated June 22, 1951. The search was made on June 22, 1951. Art. 27, sec. 306 of the Code, as amended by Chapter 81 of the Acts if [sic] 1950, provides that any search or seizure, under the warrant, "shall be made within fifteen (15) calendar days from the date of issuance thereof and after the expiration of said fifteen (15) day period said warrant shall be null and void." On its face the warrant shows that the "date of issuance" must have been not earlier than June 18, 1951 or later than June 22, 1951, and that the Act of 1950 had been complied with. Counsel has argued learnedly and earnestly that an undated search warrant is invalid, but without citing any authority, in this state or elsewhere, directly (or, we think, otherwise) in point. We have carefully considered this argument and the authorities cited. We are satisfied that omission to date the warrant was an immaterial clerical error, which violated no requirement of the constitution or the act and did not invalidate the warrant. If the legislature had intended that "an undated search warrant shall be null and void," it would have been easy to say so—in 1939 or in 1950. Such a provision would have given a loophole for the guilty and no real protection for either the innocent or the guilty.

*Id.* at 224–25, 88 A.2d 567.

The Court reiterated the same finding in *Wilson v. State,* 200 Md. 187, 88 A.2d 564 (1952), decided on the same day as *Bell.* The appellant in *Wilson* challenged the validity of a search warrant on several grounds. In rejecting the appellant's contentions, the Court cited several cases, including *Bell,* while pointing out that, "recently we have refused to hold search warrants invalid for a variety of reasons ... [including] failure to date the search warrant." *Wilson,* 200 Md. at 192, 88 A.2d 564 (citations omitted).

On the issue of whether the warrant would be invalid if it were determined that it was in fact undated, we note that

mere technical deficiency must be differentiated from prejudicial error in such circumstances. As § 551 does not speak to exclusion of evidence for a violation of its requirements, we must be careful to avoid overreaching and unintended remedies. Assuming for a moment that the warrant in the present case was indeed undated, there should not be a rush to invalidate it merely on those grounds.

On the other hand, we believe that it is not beyond the realm of possibility in the instant case that constitutional concerns have potentially been implicated because of the lack of a date of issuance on the warrant. Certainly, the law is well-settled that the clerical omission of a date on the warrant does not automatically give rise to an exclusion of evidence. But in those cases the date of issuance has been demonstrated through other means, and thus the omission of the date essentially represented only a minor oversight. As stated by the Second District Court of Appeals for Florida in *State v. Cain,* 272 So.2d 548, 549 (Fla.Ct.App.2d Dist.1972): "[T]he omission, if indisputably supplied by other dates in the documents and not prejudicial, is insufficient ground for suppressing evidence seized." (citations omitted). The question then becomes whether the date of issuance of the warrant in the present case is ascertainable irrespective of the fact that the warrant was in fact undated. This becomes very significant in this case because, without an identifiable date for the issuance of the warrant, there clearly becomes a question as to whether the warrant may have actually been issued *after* the search of Thompson's apartment.

In *Campofreda,* among the contentions we addressed was that of the invalidity of the warrant because it was undated. We did not consider the issue at that time, however, as we stated:

It is also within the realm of possibility, as proposed by counsel for the appellant, that the warrant was not executed within the time prescribed by Art. 27, § 551, of the Maryland Code, and, is thus, null and void. However, we cannot

say that such is the case. The record is simply devoid of sufficient information upon which to draw such a conclusion. *Campofreda*, 15 Md.App. at 700, 292 A.2d 703.

In the case at hand, we think that an inability to determine an ascertainable date of issuance would carry constitutional concerns. Such a result would constitute a technical deficiency that has been stretched to the breaking point. This fact would represent a fatal defect to the warrant and a substantial infringement upon Thompson's constitutional rights.

■ We find that this issue should be treated in the same manner as that involving whether the warrant was signed by a judge. Whether the date of the issuance had been proven should have been decided by the trial judge, as the finder of fact on such matters during a suppression hearing. This matter involved a preliminary determination that should have been made by the trial judge during the suppression hearing. It certainly was not the jury's province to make this finding, and therefore the trial judge's failure to make this determination himself constituted error.

The primary evidence set forth by the State pertaining to the date of issuance was in the form of testimony by Detective Wilson. As we have stated, credibility of witnesses is generally a determination for the trial judge. The testimony by Wilson, however, seems to have come short of establishing conclusively that the search was conducted subsequent to the alleged issuance of the warrant. It certainly would be a grave injustice to appellant were it simply to be assumed for the sake of simplicity that the search took place after the alleged issuance. We think the trial judge should allot this issue the billing it potentially deserves. The State will now be presented with a further opportunity to meet its applicable burdens and bring forth evidence regarding the sequencing of the circumstances that occurred in this case.

We remand for a limited suppression hearing for determinations whether a date for the issuance of the warrant is ascertainable and whether the warrant was signed by a judge.

*Probable Cause*

Appellant contends that there was insufficient probable cause to support the search warrant in question.[11] The affidavit for the search warrant stated, in relevant part: "Through the ongoing investigation and witness *accounts* of the incident the suspect, Tiara Cardell Thompson, black male, date of birth, 8–22–81, was identified as the shooter." Thompson argues that the word "accounts" is misleading because "it inaccurately implied that multiple witnesses had observed Appellant shoot the victim," although the evidence established that there was in fact only one witness. Thompson further asserts that the police deliberately failed to mention in the affidavit that this one witness had in fact made contradictory statements, as he had "initially told the police that he possessed no relevant knowledge."

During the initial suppression hearing, Detective Wilson was asked about the information he set forth as part of the warrant application:

Q: You make reference to witness accounts of the incident [that] identified Tiara Thompson as the shooter, is that correct, in the third full paragraph?

\* \* \* \* \*

A: Yes.

Q: And at that point in time-actually, there is only one person who allegedly identifies Tiara Thompson as the shooter; isn't that correct?

A: That's correct.

\* \* \* \* \*

Q: And that one witness-you're aware that he made a statement a few hours prior to implicating my client as being the shooter? Are you aware of his first statement?

---

11. We assume for purposes of this contention only that, aside from whether it was based on sufficient probable cause, the warrant was valid as to other concerns.

A: I knew that he had been interviewed. I don't know the exact details of his first statement, but I was aware that he had been interviewed prior to me.

\* \* \* \* \*

Q: In the statement he provided to you he acknowledged he was present at the time of the shooting?

A: That's correct.

Q: Which was contrary to his first statement; is that correct?

A: That's correct.

Thompson maintains that the information in the affidavit was therefore false and misleading, and that "this inflation of the information known to the police is precisely what the *Franks* [*v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ] procedure was designed to remedy." He suggests further that "it is entirely possible that a judge faced with an affidavit based upon the account of one person who had provided diametrically different stories within hours of each other would not have issued a warrant." Although there is some accuracy to Thompson's claim, he is mistaken regarding the legal standards we must apply to our review of the circumstances. The appropriate standard for reviewing a contention that the affidavit in support of a search warrant intentionally included false information was established by the Supreme Court in *Franks:*

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfacto-

rily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

\* \* \* \* \*

Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Id.* at 171–72, 98 S.Ct. 2674 (footnote omitted).

The trial court addressed appellant's points at trial. Regarding the omission by police concerning the witness's prior statement, the trial judge said: "I don't think it is necessary for it to be in there." Additionally, the trial judge responded to Thompson's contention that the affidavit was misleading by stating:

I believe that the probable cause is not tainted by any exaggeration or other bad faith or reckless disregard, and even if there was only one witness, the probable cause would still be there, and I am not coming behind that determination.

In *Yeagy v. State,* 63 Md.App. 1, 491 A.2d 1199 (1985), we said: "A magistrate cannot adequately determine the existence of probable cause with the requisite judicial neutrality and independence if the police provide him or her with a false, misleading, or partial statement of the relevant facts ... but we will not invalidate a search warrant unless the omissions were material." *Id.* at 8, 491 A.2d 1199 (quoting *United States v. Flores,* 679 F.2d 173, 176 n. 1 (9th Cir.1982)). We then stated that the trial court "considers whether probable cause would exist if the omitted information were included." *Yeagy,* 63 Md.App. at 8, 491 A.2d 1199 (citations omitted).

■ Our standard for review of an issuing judge's probable cause determination is that so long as the issuing judge had "a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *West v. State*, 137 Md.App. 314, 322, 768 A.2d 150 (2001). We said in *West* that "[r]eviewing courts (at the suppression hearing level or at the appellate level) do not undertake *de novo* review of the magistrate's probable cause determination but, rather, pay 'great deference' to that determination" (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

■ Our review of the record establishes that there was a substantial basis for the issuing judge's determination of probable cause, based on one witness's account, and it was likewise within the province of the trial court to believe or discredit certain testimony when it reviewed the issuing judge's basis of probable cause. The trial court found that probable cause existed after being informed of both the misleading and omitted information in the affidavit. "The trial court, as fact finder, was free to credit or disbelieve the testimony of witnesses. Applying the proper standard of review to the facts as found by the trial court, the court properly denied appellant's motion to suppress the fruits of the search and seizure warrant." *Rosenberg v. State*, 129 Md.App. 221, 248, 741 A.2d 533 (1999).

We therefore agree with the trial judge's assessment on this issue. Appellant has not demonstrated a level of deliberate falsehood or reckless disregard for the truth regarding the misleading information, i.e., the use of the word "accounts," in the affidavit. Appellant also failed to demonstrate that the police officer was aware of the contents of the witness's first statement to police at the time he filled out the affidavit. Moreover, appellant has not presented sufficient legal authority supporting his position that the police officer, even if he was aware of the contents of the first statement, was actually required to divulge that information in the affidavit.

Before departing from this issue, we feel compelled to offer a caveat to the police regarding their efforts at obtaining the issuance of search warrants. The apparent carelessness applied in this case is nothing short of disturbing. Although we believe it to be inadvertent, the lackadaisical manner in which the word "accounts" rather than "account" was used in the affidavit provides cause for concern. The interruption to our system of justice could be grave should we discover that such acts of indifference are occurring more frequently than should be the case with trained professionals.

## II. Probationary Period

Thompson's final contention involves the period of probation for which he was sentenced by the trial court. He asserts that the trial court imposed two five-year periods of probation and that the total consequent probationary period of ten years was illegal because the "maximum period of probation which may be imposed at a single sentencing hearing is five years." Thompson argues, therefore, that his "sentence must be modified by striking one of the five-year terms of probation." The State agrees with appellant that the law clearly establishes five years as the maximum period of probation that may be imposed at a single sentencing. The record reveals that the trial judge imposed the following sentence:

The sentence of this court is on count one that you are committed to the division of corrections for a period of 30 years. I am suspending all but 25 of those years, and sentence will account from November the 11th, 1999. You are given credit for the 288 days that you have already served.

With regard to count two, the—and upon his discharge he will be placed on probation for a period of five years under the supervision of the department of parole and probation. He is deemed to be indigent for the purpose of paying court costs and public defender's fees.

With respect to count two, the sentence of this court is that you are committed to the division of corrections for a period of 20 years. I am suspending all but 15 of those

years. That sentence will be served consecutive, five of which will be without the possibility of parole, as the statute requires, and that sentence is to be served consecutive to the sentence that I just imposed in count one.

Upon his discharge there he is also placed on probation, again for a period of five years. He is in—as soon as he signs the paperwork he is in your custody, Mr. Sheriff.

Thompson's sentencing was governed by Md.Code (1957, 1996 Repl.Vol.), § 641A of Article 27, which provides, in pertinent part:

(a) *In general.*—(1) Upon entering a judgment of conviction, the court having jurisdiction may suspend the imposition or execution of sentence and place the defendant on probation upon such terms and conditions as the court deems proper.

\* \* \* \* \*

(3) The court may impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation for a period longer than the sentence but not in excess of five years.

(4) However, if the defendant consents in writing, the court may grant probation in excess of 5 years, but only for purposes of making restitution.

■■■ We note that § 641A does allow for an extension of the probationary period beyond five years with the consent of the defendant, but only for purposes of restitution.[12] As restitution was not a factor in the trial judge's sentencing in this case, we find that any period exceeding five years of probation was invalid in this instance. *Christian v. State*, 62 Md.App. 296, 301, 489 A.2d 64 (1985). The State suggests that appellant was not actually sentenced to a ten-year proba-

---

12. We do not say that a defendant *never* can be under probation for more than five years except for cases involving restitution. But it is uncontroverted that circumstances do not exist in the present case to justify a probationary period of longer than five years.

tionary period, but that the trial court "imposed only one five-year probationary period upon Thompson's release for the second degree murder conviction." The State interprets the language by the trial judge at sentencing to mean that he was "merely referencing the time frame for the probationary period it imposed for the second degree murder sentence." The State maintains that this interpretation is accurate as it is "evidenced by the fact that there was no objection by either parties to the sentence, and the docket entries reflect only one five-year period of probation."

We think that the trial judge did indeed intend to impose only one five-year period of probation, but that the language he used at sentencing allowed for conflicting interpretations of his intention. We point out, however, that "a reviewing court should be assured that the five year limitation has not been violated." *Laurie v. State*, 29 Md.App. 609, 614, 349 A.2d 276 (1976). Therefore, we remand this issue to the trial judge in order to provide him with an opportunity to clarify the term of probation to be served by appellant.

## *Conclusion*

For the reasons stated herein, we remand to the trial court for it to conduct a limited motion to suppress hearing in order to make the determinations as to whether the search warrant was validly executed by a judge, and, if so, whether a date for its issuance is ascertainable. Should the trial court find that the search warrant was indeed valid regarding both of these issues, then we shall consider the trial judge's failure to initially make these findings harmless error. In that event, appellant's contention regarding his probationary period would remain of consequence, and, accordingly, that issue is remanded to the trial court for a clarification of the probationary sentence imposed on appellant, in accordance with our discussion on that topic.

On the other hand, should the trial judge make the finding that the search warrant was not validly executed, either because it was not signed by a judge, or because its date is not ascertainable, then we find that appellant's convictions cannot

remain in force, and appellant would consequently be entitled to a new trial. In that event, appellant's contentions regarding the probationary period would obviously be of no consequence.

We add briefly that, in any event, appellant's contention regarding the insufficiency of probable cause shall not be addressed on remand, in accordance with our rejection of that argument.

**JUDGMENTS VACATED AND REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR PROCEEDINGS IN ACCORDANCE WITH PROVISIONS SET FORTH HEREIN.**

**COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**